# CHARLESTOWN.

ANDERSON *et al. v.* PIERCY *et' al.*

Submitted January 19, 1881—Decided September 1, 1882.

\*(SNYDER, JUDGE, Absent.)

1. An objection to the proceedings in a chancery cause, that another chancery suit is pending in the same court for the same cause of action, should it be presented by a plea or a motion to dismiss as a preliminary question and as an incident among other matters in an answer on the merits, it will not avail.   (p. 321).

2. A bill brought by residuary legatees is not multifarious, which seeks the settlement by an executor of a father of his estate and also of the mother's estate, where by the agreement of the parties interested the executor of the father had agreed likewise to act as executor *de son tort* of the mother and distribute the estate of the mother after the payment of her debts in the same manner and to the same parties, to whom the father's estate was to be distributed, the two estates being so mingled, as to make their separation difficult.   (p. 323.)

3. An executor should be charged in the settlement of his accounts with all the assets of his testator, which he has collected in money, or which he has converted to his own use by exchanging the debt or obligation due the estate for an obligation of a third party and also with such debts, as have been lost to the estate, and as could have been collected by the use of reasonable diligence.   (p. 324.)

4. When a debt due to the testator has been collected, the executor should be charged in the settlement with the debt as of the time, when he actually collected it, and not as of the time, when he might have collected it by the use of reasonable diligence.   (p. 325.)

5. An executor in the settlement of his accounts should not except under extraordinary circumstances, be charged with a good debt, which he has not actually collected, simply because by the use of reasonable diligence he could have collected it before.   (p. 325.)

6. If a debt has been lost to the estate by the negligence of the executor in not taking steps to collect, when it could have been collected, he should be charged with such debt and interest as of the time, when it should have been collected.   Such charge is made not because his unreasonable delay in attempting to collect the

---

\*Cause submitted before Judge Snyder came on the bench.

debt was a conversion of the assets of the estate, but because his negligence in not attempting to collect the debt, whereby it was lost, is such a tort, as should make him responsible for the loss actually sustained by the estate by such negligence.   (p. 324.)

7. The debts, which are stated in the inventory as good, after a reasonable time will be *prima facie* presumed to have been collected; and it devolves upon the executor to show, that they have not been collected, and not on the legatees to show, that the executor has been guilty of misconduct or negligence in reference to such debts.   (p. 325.)

8. Where a debt is due to the testator from a perfectly solvent party and is in no way risked by the indulgence of the executor, he has a large discretion in granting indulgence on such debt, as under many circumstances such a debt, if collected, could not be at once paid out, and as the executor knows best the needs of the estate for money, the court would not hold him responsible for the not collecting of such a debt promptly, provided it remained a perfectly good debt.   (p. 325.)

9. In settling an executorial account an executor ought not to be charged with interest from the day of the receipt of each sum of money; but the account should be closed at the end of each year, and the interest should be charged on the balance due at the end of each year; and such interest is not carried into the account of the succeeding year, as is done in an account between debtor and creditor, so that the payments should be made out of the interest, but the interest in settling an executor's account is so kept separate, as that the payments made by the executor are applied to the discharge of the principal due first and not of the interest due.   The interest being brought into the account only at the close of the transactions.   To this general rule however there are some exceptions.   (p. 326.)

10. The account with the legatees is however settled on a different basis, that is, on the basis of an account between debtor and creditor; and the account with the legatees settled on this basis should be opened, after a reasonable time has been allowed the executor to pay the debts of the estate, whether they have been actually paid or not by the executor.   (p. 324.)

11. Where a slave was with all the residue of the testator's personal estate left prior to the late war to a number of residuary legatees, and prior to this war the estate was not in a condition to be distributed among them, it was the duty of the executor to hire out such slave; and if the slave was lost as a consequence of the war, the executor should not be held responsible for the loss, as he had no right to sell him, the payment of debts or legacies not requiring the sale of the slave.   (p. 334.)

12. If an executor neglects to sue for a debt due his testator promptly,

when the pecuniary condition of the debtor made it his duty to do so, and the debt is lost by this negligence, the executor should be charged with such debt. Nevertheless if he brings a suit for such debt, though not promptly, he should be allowed the costs of such suit and the reasonable counsel fees paid by him, even though the debt be lost, if at the time he instituted the suit, there was a reasonable prospect of his being able to save the debt; for it was, when he instituted the suit, an asset of the estate, which it was his duty to endeavor to save by suit. (p. 327.)

13. If an executor voluntarily pay a legacy, he can not afterwards maintain a bill to compel a legatee to refund, unless it becomes necessary for the discharge of debts, even though the executor has made such over-payment under the belief, that a large debt supposed to be due the estate would be collected, and without his fault it was never collected. (p. 328.)

14. But such over-payment of one legatee ought not to be regarded as such an admission of assets in the hands of the executor, as should bind him to make a like over-payment to other legatees. (p. 328.)

15. If an executor shortly after his qualification brings a suit to settle his accounts and make a distribution of the estate under the order of the court, there being a necessity for such a suit because of the difficulty in the particular case of making such distribution except under the order of the court, and after a settlement in such suit of the executor's accounts by a commissioner, this necessity of the interposition of the court in order to a distribution of the estate having ceased, the suit is not prosecuted by the executor nor by the legatees, but the legatees after a lapse of much time institute an independent suit in the same court against the executor and his securities for a settlement of his accounts, and in this suit both these causes are heard together, and a large balance is found due from the executor, and the legatees believing, that a still larger balance is due from him, appeal from the decision of the circuit court, and the Appellate Court reverses the decision of the court below and finds a still larger balance is due from the executor, the costs of the court below and in the Appellate Court should be paid out of the estate and not by the executor personally. (p. 340.)

16. Generally a legacy to a child bears interest from the death of the testator. (p. 328 )

17. The renunciation of a will by a widow will not be allowed to break up the arrangements of the will, and to disappoint the interest of others under her husband's will further than is absolutely necessrry. In all other respects, but as regards her, the will ought to be executed as nearly as possible according to the wishes and instruction of the testator. (p. 301–339.)

Appeal from two decrees of the circuit court of the county of Greenbrier rendered respectively on the 18th day of June, 1879, and on the 12th day of November, 1879, and a. *supersedeas* to a portion of the last named decree in a cause in said court then pending, wherein Peter L. Anderson and others were plaintiffs and George Piercy, executor, and others were defendants, allowed upon the petition of plaintiffs.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the decree appealed from.

GREEN, JUDGE, furnishes the following statement of the case:

John Piercy sr. died in 1858. His personal estate consisted of notes, bonds and accounts amounting to about twelve thousand dollars. His other personal property was appraised at two thousand one hundred and forty-two dollars and twenty-five cents including two slaves valued at eight hundred dollars each. He was in debt to a very small extent. He made a will, in which he directed his executor to dispose of his estate, and made special bequests to certain of his children, which amounted in all to three thousand four hundred and eighty dollars. He made certain bequests to his wife, Mary, not necessary to be specified; for she renounced his will and the residue of his property John Piercy by his will bequeathed to be equally divided among certain of his children and the descendants of a deceased daughter not including one of his grandchildren a child of Mrs. Beckett, who was dead, whom he did not mention in his will. His wife after his death and the renunciation of the will by her claimed certain property on the premises and certain debts and obligations as belonging to her, alleging that these debts and property were under an arrangement made with her husband her separate estate. John Piercy sr., had also it was claimed loaned money and property to some of his children, who, it was thought, ought to account for the same in the final settlement of his estate to settle these various disputes and controversy among the family of John Piercy sr. His son, George Piercy, his executor, promptly within less than six months after his qualification instituted a suit against his

widow, children and grandchildren in the circuit court of Greenbrier. The bill asked for a settlement of the estate and its distribution under the direction of the court. An order of reference was made in this cause; and under it commissioner Harlow made a settlement and report to the court on October 4, 1860; but the court took no action upon this report. During the war the papers of this cause were lost; but sometime after the close of the war they or a portion of them were found.

In 1866 the widow, Mary Piercy, having died she made a will; but those interested in it never presented it to probate, and its contents do not appear. Those interested in it by a writing under their hands and seals agreed, that her estate might be administered by George Piercy, the executor of her husband John Piercy sr., and that it should be administered and distributed as his estate, except that Mary E. Beckett, the grandchild pretermitted in his will, should receive one thousand dollars. This amounted to a settlement by the parties of the main subjects of controversy in this suit, which had been instituted by George Piercy the executor of John Piercy sr.; and though the papers of this suit or a part of them were found, no action was ever thereafter taken in it, but it was apparently abandoned, at the time this suit was instituted, and in March, 1878, certain children of John Piercy sr., instituted the suit, now before us for decision, in the circuit court of Greenbrier, it being brought for a settlement of the accounts of George Piercy, as executor of John Piercy sr. But before its institution a controversy arose between George Piercy as executor of John Piercy sr., and James M. Beckett, a son-in-law of John Piercy sr. John Piercy jr., one of his sons, and James M. Beckett were joint owners of six or seven acres of land known as the "factory-property." Beckett gave a deed of trust on this factory-property in favor of John Piercy sr., for two thousand seven hundred and twenty-seven dollars and eight cents, in which deed George Piercy was the trustee, and becoming executor of John Piercy sr., he could not act as such trustee. Beckett sold his moiety of this factory-property to John Piercy sr.; and it was claimed, that John Piercy jr., agreed to this incumbrance on the property, or at

least that he promised Beckett to procure this bond and deliver it up to him; and he did in some manner get possession of the bond and delivered it up to Beckett; but how, it is very difficult to determine.   Whether he executed his own bond for it or not was a subject of controversy.   No such bond was found among the papers of John Piercy sr., after his death; but there were admissions, disputed however, that John Piercy jr., owed this debt or at least a part of it to his father.   This being the confused condition of things relative to this debt, by advice of counsel in 1868 George Piercy, executor of John Piercy sr., brought his suit to subject this factory-property to the payment of this lien upon it, none or certainly the greater part of this Beckett debt never having been paid to John Piercy sr.

The circuit court of Greenbrier held, that this debt was a lien on this factory-property and ordered its sale to pay the same.   This decree was rendered April, 1871.   An appeal was taken to this Court, and promptly decided at the January term, 1872.   The decree of the circuit court was reversed and the cause remanded to that court for further proceedings, this Court being of the opinion, that the giving up of this Beckett bond to him and its cancellation was a satisfaction of it, and the land conveyed in the deed of trust as a security for it was no longer liable to its payment by reason of this deed of trust, and that if John Piercy jr., was responsible for this debt, it was only by reason of his agreement with John Piercy sr., to pay it, when this Beckett bond was surrendered.   When the cause went back to the circuit court, this bill was amended, and it was alleged, that John Piercy jr., had given his bond to John Piercy sr., for the amount of this Beckett debt, at the time the Beckett bond had been surrendered; but that this bond of John Piercy jr., had been lost or mislaid.

This amended bill asked, that the estate of John Piercy jr., who was then dead, might be settled; that his creditors might be convened, and this debt be paid out of the personal or real funds.   The circuit court was of opinion that the evidence was insufficient under the circumstances to satisfy the court, that John Piercy jr., ever executed his bond to his father for this Beckett debt; and, even if such had been the

case, that the evidence did not show, that such bond or any part thereof remained unpaid; nor is there sufficient evidence to charge the estate of John Piercy jr., by simple contract for said debt; and if such ever had any existence, it would now be barred by the statute of limitations. The plaintiff's bill was therefore dismissed, so far as it related to this Beckett debt, but the cause retained for the settlement of the estate of John Piercy jr.

This decree was rendered June 2, 1876; and an appeal was again taken to this Court which on August 23, 1873, reversed this decree, because the circuit court improperly retained the cause to settle the estate of John Piercy jr., and dismissed the bill and amended bill at the costs of George Piercy, executor of John Piercy sr., these costs to be paid out of the assets of his testator in his hands to be administered. This case is reported on the first appeal in 5 W. Va. 199 and on the second appeal in 15 W. Va., p. 444.

While this cause was pending in this Court on this second appeal, in March, 1878, Peter L. Anderson and wife, Peter Hendrick and wife, William Masters and wife and Mary E. Beckett brought the suit now before us for decision and filed their bill in the circuit court of Greenbrier against George Piercy in his own right, as executor of John Piercy, deceased, and as executor *de son tort* of Mary Piercy, deceased, for a settlement of his accounts as executor of John Piercy sr., deceased, and as executor *de son tort* of Mary Piercy, deceased; and there were made defendants in this bill, also all the legatees of John Piercy sr., deceased, and their representatives and all persons having an interest in his estate as well as his sureties in his executorial bond, and all persons having an interest in the estate of Mary Piercy, deceased, who were the same persons, who were interested in the estate of John Piercy sr., she being his widow.

The bill stated, that John Piercy sr., died June 8, 1858, leaving nine children living at his death and eleven grandchildren, who were the children of a deceased daughter of John Piercy sr., all of whose names and the names of the husbands of his daughters are set forth; that he left a will, whereby he decreed certain real property and bequeathed certain personal property to his wife Mary Piercy, but she

promptly renounced the will according to law; that in 1866 she died leaving a will, whereby she gave one thousand dollars to the plaintiff, Mary E. Beckett, who was the only child of a daughter of her husband, for whom he had made no provision in his will; that this will of Mary Piercy was never probated, but it was agreed in writing by all parties interested, that George Piercy, the executor of her husband, John Piercy sr., should settle and distribute her estate without regard to her will, if she had any, and they released all their interest in this will, except that this legacy of one thousand dollars to Mary E. Beckett was directed to be paid out of the estate of John Piercy sr.; that this paper was not only signed but sealed by all parties, who had any interest in the estate of Mary Piercy under her will; that George Piercy, executor of John Piercy sr., took possession of all her estate accordingly; that John Piercy sr., by his will decreed to certain of his children certain specified real estate, and he also gave to his sons, George five hundred dollars, Samuel five hundred and ninety dollars and to John and Andrew his farming untensils and stock except such portions of it, as he had bequeathed to his wife, and certain stock to his daughter, Martha; that to his daughter, Cynthia, he gave one thousand and ninety dollars, and to his daughter Martha one thousand and three hundred dollars and certain stock, &c.; that by the seventh clause of his will he gave all his estate not otherwise disposed of equally to his son George and daughter Cynthia, the children of his daughter Rebecca and to Mary, William, Samuel and Martha, who were his children.

The bill further states, that George Piercy qualified in June, 1858, and gave his executorial bond in the penalty of fifteen thousand dollars, with certain persons as his securities, who are also made defendants to the bill. At the September term, 1858, George Piercy, the executor, had returned and recorded an appraisement and inventory of the estate, in which the personal property is valued at two thousand one hundred and forty-two dollars and twenty-five cents, and the debts due the estate by the inventory amounted on September 1, 1858, to twelve thousand one hundred and twenty-seven dollars and eleven cents; that no sale was made by the executor, and no sale bill was returned; that a considerable

amount of personal property named in the bill as well as a considerable number of bonds and debts, of which five are specified, came into the hands of the executor, but were not placed in the appraisement or inventory; that in October, 1858, George Piercy, the executor of John Piercy sr., filed his bill in the circuit court of Greenbrier against the widow and legatees of his testator for a discovery of the assets of his testator and for a settlement and distribution of the testator's estate; that an order was made in this suit for such settlement, and in October, 1860, the commissioner returned a report showing, that the executor was then indebted to the estate thirteen thousand seven hundred and twenty-four dollars and fifty-three cents, which did not include the value of two slaves worth one thousand dollars, nor did it include any of the property omitted in the appraisement and inventory; that no action was ever taken on this report, but the executor then abandoned his suit, and has persistently refused, though often urged, to settle his accounts, and has held this large estate in his hands and has not paid it over, as he was legally bound to do.

The bill points out the parties then entitled to this estate of John Piercy sr.; and they are all made defendants as well as the personal representatives of such as had died. There is filed with this bill as exhibits a copy of the will of John Piercy sr., and its probate, a copy of the appraisement of his estate, the renouncement of this will by his widow, a copy of the will of William Piercy showing, who represented his interest in his father's estate, and a copy of the paper signed by the legatees of the widow, Mary Piercy, above referred to, all of which are made parts of the bill.

The infant defendants and George Piercy, executor, filed answers, which were replied to severally; and the bill was taken for confessed as to all the other defendants. In his answer George Piercy denies that he was executor *de son tort* of his mother, Mary Piercy, though he says he paid her physician's bill, burial expenses, &c., and he demurs to the bill as multifarious in asking a settlement of both his father's and mother's estate in one suit; and he asks an abatement of this suit because of the former suit brought by him referred to in the bill. He states, that the papers of this suit had

been taken away and mislaid for a long time but that they had been found before this suit was brought. He admits that the agreement referred to and filed with the plaintiff's bill in reference to his mother's estate whereby he and the other persons interested in her estate agreed, that he should settle and distribute it as stated in the bill. On May 30, 1878, the court ordered, that the report which had been made by Commissioner Warlow no longer acting be referred to Commissioner J. M. McWhorter with instructions to reform this report so as to show:

"1st. An account of the administration of George Piercy, executor, upon the estate of John Piercy sr., deceased, charging said executor with all assets which did or should have come to his hands as such, and crediting him with all proper disbursements.

"2d. An account of the administration and transactions of said George Piercy as executor *de son tort*, if he so acted, of the estate of Mary Piercy, deceased.

"3d. An account of the administration of J. W. Johnston, administrator, upon the estate of said Mary Piercy, deceased.

"4th. An account between said George Piercy, executor, and each of the legatees of said estates of John and Mary Piercy, basing the same, so far as it is applicable, upon the contract marked exhibit "F" filed with the plaintiff's bill; and,

"5th. Any other matters deemed pertinent by himself or required by any party, he shall state specially."

And the court further ordered that the creditors of the estates of John and Mary Piercy should be convened according to law and stated how this was to be done.

Commissioner McWhorter made his report October 31, 1878, which was excepted to, but without acting on them the cause was referred again to said commissioner generally with directions for him to correct it as he might think proper. This reference was made November 15, 1878, and on May 1, 1879, he made his report as follows:

"In pursuance of an order entered in the cause of Peter L. Anderson and others *v.* Geo. Piercy, executor of John Piercy sr., and others, re-committing said cause to this commissioner for the purpose of restating and reforming said report and

correcting any errors that might appear, your commissioner gave notice to the parties, by their attorneys, that the account would be opened on the 10th of April, 1879, at his office. On the day appointed the executor appeared in person and by attorney, and the plaintiffs, by their attorney, appeared. Some further depositions were taken, which are returned herewith marked "X. T." It is apparent that there are errors in the first report, some of which arise from mistaken principles that should apply in the statement of the accounts, and others from omissions mentioned therein. The plan of the statements of the first report was suggested somewhat by the evidence taken in the cause. As recoveries of judgments were made, or notes or bonds collected, they were charged to the executor. In this report it is stated somewhat differently, as the first report will not probably form any part of the record. In the event of an appeal from any decree that may be pronounced by this Court, it will be proper to give a history of the case and the various points that arise in it. John Piercy sr., died in June, 1858, leaving a large personal estate, consisting principally of bonds and *choses in action* and some considerable personal property. Before his decease he made a will in which he made several special bequests, and the residue of his personal estate was to be equally divided among seven of his children, three having been provided for in real estate. His widow, Mary Piercy, and his son George were appointed to execute his will. George qualified, and the widow renounced the provisions of the will, and thus became entitled to one-third of the estate, after payment of the debts (and there seems to have been no debts of any consequence). The will disposed of most of the stock and property on the farm. There were two slaves, a man and woman that were not mentioned in the will. Some time after the executor qualified, he instituted a suit in chancery, one of the objects of which was to recover some evidences of debt still held by his mother, and claimed by her as her separate property. Another object stated was to settle the estate. This suit was pending when the war of 1861 began, which is recited in plaintiffs' bill. The executor qualified at the June term, 1858, of the county court of Greenbrier county, and in the executorial account stated, in-

terest is calculated on the debts with which he is charged the first year to September 1st of the following year, and then time is given to the 31st of December for collection and disbursement, and at which time the annual rest is made. Instead of charging the executor with money along as he seems to have collected it, according to the evidence, the account here stated charges him with all that were considered solvent, and for which he should be held accountable in the first and second years, and at the end of the second year (December 31, 1860,) being about two years and one-half from his qualification, the account is closed, and including some debts which the executor, by his attorney, claims he should not be charged with, he had in his hands the sum of thirteen thousand nine hundred and ninety-three dollars and ninety-one cents, of which the widow was entitled to one-third or four thousand six hundred and sixty-four dollars and sixty-three cents, leaving in his hands for the heirs nine thousand three hundred and twenty-nine dollars and twenty-eight cents, and from this is deducted three thousand four hundred and eighty dollars, the amount of special bequests, leaving to be divided among the seven heirs designated in the will, five thousand eight hundred and forty-nine dollars and twenty-eight cents, giving to each the sum of eight hundred and thirty-five dollars and sixty-one cents. In arriving at the foregoing, the executor is allowed his commission on the whole sum charged; he is charged with the sale bill, amounting to two thousand one hundred and forty-two dollars and twenty-five cents, which includes the two slaves at one thousand six hundred dollars, appraised price; he is charged—the debt known as the "Beckett debt," with the debt or account against John Piercy jr., for five hundred and sixty dollars, and with a debt against Claudius B. Martin. These are mentioned specially because the right to charge him with them is controverted. He is also charged with a bond that Mrs. Piercy held against John Piercy, jr., not on the inventory, and some other debts which she collected which she claimed as her own and sole property. In the statement of the account between the executor and Mrs. Mary Piercy, she is charged with the negro woman, which she kept, and with the bond aforesaid on John Piercy jr., and the debts collected, and with such personal

property as she got, and the executor credited therewith. The executor is also credited with such other property as seems to have been taken by other parties claiming it under the will, amounting to three hundred and sixty-two dollars and twenty-five cents. This was designated by the widow of John Piercy jr., on the appraisement bill in her examination as witness. The executor has been very indulgent with the debtors of the estate, or perhaps a better term would be that he has been negligent in the collection of the debts, actuated by kindness no doubt, and some of the debts are still uncollected, though on solvent parties. It will be necessary to mention particularly some of the claims and charges made against the executor, that a proper understanding of the several questions arising may be had by the court—first, as to whether he should be charged with the two negroes appraised. In the will nothing is said in regard to them, but a number of debts is created in the form of special legacies, and after payment of the debts the residue is to be paid to certain of testator's heirs. Were this property taken by any one of the heirs or the widow, such heir or the widow would be chargeable with the value thereof, and to meet the provisions of the will, it seems to me that they should have been turned into money. In the account the executor is charged with them, and Mrs. Piercy claiming the woman, the executor is credited with the price and Mrs. Piercy charged as a part of her third of the property. The woman taken by Mrs. Piercy died, and the man escaped during the war. The bond on John Williams and George Knight, five hundred and eighty-four dollars, is charged, although uncollected, and is now filed as a claim against John Williams' estate. It appears that it might have been collected, the obligors at the time being solvent; it will be realized some time yet. The two debts against John Piercy jr., one of one thousand nine hundred and sixty-three dollars and eighty-two cents, called the Beckett debt, and the one of five hundred and sixty dollars, on which judgment was obtained in 1869 against John Piercy's administator, are debts that were known to the executor to exist soon after he took charge of the estate. As to Beckett debt, soon after the death of his father a party came to the executor, who states that John had

sent the statement, Exhibit No. 3 of suit against Beckett *et al.*, showing that he owed only the sum named on said debt. (See Geo. Piercy's deposition, page 18-20). So also as to the other debt; knew of its existence, but what was the course pursued? No effort was made to collect the Beckett debt until the year 1868, when suit in chancery was instituted, nor was any effort made to recover the other debt until January, 1861, when within one month of being barred by the statute, suit was instituted. It is shown that John Piercy jr., was solvent up to the date of instituting the suit. To apply the principles laid down in the case of *Southall's Adm'r* v. *Taylor et al.*, 14 Gratt., p. 269, and the executor would be liable for these debts.

"In the first report in this cause, the executor is not charged with the Beckett debt, as it seemed he had done what he could to secure it, and that a mistake had probably been made by the attorney as to the remedy. At that time I had not particularly noticed the time when he had taken action, and now I think I was more lenient towards the executor than the law in case cited warrants.

"In the account stated first these debts are charged to executor. At the date of the death of John Piercy sr., he had a judgment in force against Madison McClung and others, on which was a balance of three hundred and seventy-two dollars and seventy-one cents. This judgment never has been revived in the name of the executor, and was permitted to lie without renewing execution until it was barred by the statute and became a loss. This judgment is charged to the executor, as any diligence on his part would have saved it to the estate. There is a bond of eight hundred and forty-nine dollars and thirty-one cents against John and Elizabeth Piercy and Hannah Gee, which the executor claims was the property of Samuel Piercy, and was intended by the testator to be in lieu of and in payment of the special legacy of five hundred and ninety dollars to Samuel Piercy. (See George Piercy's deposition, page 12, and also John Piercy's deposition, page 2.) This bond has been treated as the property of the estate from the beginning, and bears date anterior to the will itself, and the executor assumed the management of it as part of the assets. Decree was entered for the amount of it

in October, 1871, in the cause of *Moses Dwyer* v. *Hannah Gee and others*, but has never been enforced. The bond is charged to the executor. Another bond the executor claims he should not be charged with, is a bond against Claudius B. Martin, which he claims could not have been made; gives his own deposition and filed a number of abstracts of the record in the case of *Rellehan* v. *said Martin* to show his insolvency; also an abstract from the assessor's books. On the other hand the plaintiff took the deposition of Ballard Caraway, who was the administrator of Martin, to show his solvency. It will be seen from the evidence that while the executor alleges that he sued on the bond and that nothing could be realized, yet it must have been some twelve or fifteen years after Martin's death before he instituted his suit, and from all the evidence, I am led to the conclusion that if proper diligence had been used, there is very little doubt that it could have been recovered. There are some other debts which the executor claims were insolvent, and it has been shown by evidence that satisfies my mind that the debt against S. S. Thompson and one on Patterson could not have been made, and they are not charged to the executor. In March, 1864, the executor funded one thousand and two hundred dollars in Confederate bonds as executor, and files a certificate of the depository for which he claims a credit. This money was funded when the executor was largely indebted to the distributees, who lived near him, or in same section of country, and he should have paid it to some of them instead. If they were opposed to receiving that kind of money, he should not have received it on debts due before the war. He takes his own deposition to show that this money had been collected for and at the instance of one of the heirs, who expected to need it in the event a certain contract was consummated.

"The contract was not entered into, nor does it appear that the executor ever tendered the money to the heir, Wm. Masters, and some time after the executor funded the money. The certificate is rejected as a voucher for a credit to the executor. This, I believe, disposes of all the questions as to the claims to be charged, but there are others that will arise in the case. One is, whether the executor should be

allowed commission or not; another is, whether the costs of
this suit should be deducted from the estate, or, as the heirs
were forced to bring this suit, the costs should not be settled
by the executor.   Had the executor proceeded at once, upon
upon his qualification, to have settled up the estate and made
distribution of the assets, as was his duty, comparatively
little would have been expended in the way of costs ; at
least, looking from the present standpoint, there seems to
have been little existing at that time to complicate affairs,
and there are some grounds for deciding both questions in
favor of the distributees ; but in the statements these questions
are both stated in favor of the executor.   A brief explanation
of the manner or course pursued in the statements is now
submitted.   The executorial account, as already stated, is
closed at the end of the second year, about two and one-half
years after the qualification of the executor, and he is
charged with all claims that appear to have been solvent and
credited with all charges paid against the estate to same date.
After that period such taxes and proper charges against the
estate as were paid by the executor in any year are charged
to the account of the distributees, respectively, in proportion
to their respective interest in the estate, with interest compu-
ted on such proportion from the year of payment down to
the 1st of June, 1879.   To the widow, Mary Piercy, is charged
one-third of such costs and charges, and to each of the other
seven distributees of the estate one-seventh of the remaining
two-thirds of such costs and charges.   Thus are the distribu-
tees of the estate to whom the estate is apportioned, at the
end of the executorial account, made to pay their respective
proportions of the liabilities of the estate, in which is in-
cluded all claims against it, including attorneys' fees, out-
standing costs, whether paid or unpaid, and four hundred
and fifty dollars, estimated costs of this suit.   There are,
however, two hundred dollars attorneys' fees to Samuel Price
and R. F. Dennis, contingent, which are not included.
Knowing that the executor, by his attorney, would claim
exoneration from the charges of the price of the negro man,
eight hundred dollars, and also for the Beckett debt, one
thousand nine hundred and sixty-three dollars and eighty-
two cents, and the debt on account against John Piercy jr.,

of five hundred and sixty dollars, three alternate statements have been made; the one called 2d statement, showing what would be due to or from each distributee in case the price of the man is not charged to the executor; the 3d statement shows what would be due to or from each in case the price of the man and Beckett debt are not charged, and the 4th statement, what would be due to or from each in case the price of the man, the Beckett debt and the debt against John Piercy jr., are all allowed; so that a decree excluding either of the last mentioned debts and not the price of the man, would require a new statement, but only a short time to do it would be necessary. The amount found due the widow at the close of the executorial account is treated as remaining in the hands of the executor, and interest is computed thereon to June 1, 1879, when her proportion of costs and charges, with accrued interest, and a debt due from her to Col. Gordon, with its interest, is deducted, and the remainder, with what is found in the hands of George Piercy as administrator *de son tort* of Mary Piercy, deceased, after taking out one thousand dollars for Mary Beckett, is divided among her ten heirs equally. Further statements 2, 3 and 4, are also made with reference to the exclusion of the debts mentioned—price of slave, Beckett debt, and debt against John Piercy jr. The account filed against the executor by Col. J. W. Davis, has been settled by George Piercy upon giving his note for fifty-nine dollars, which is charged up as part of the costs of the administration. The outstanding debts are settled in the account, and if report confirmed they will be claims against George Piercy, as the estate has accounted to him for their amounts. A recapitulation is made, showing what is due each distributed in the event of the adoption of either statement. The account I found a very troublesome and difficult one to state, or at least in hitting upon a plan that seemed equitable and just to the several parties. And if all the equities are considered, it is not certain that either statement is entirely correct, nor is it certain that exact equity can ever be done, but in the accompanying statement is a basis, and whatever may be the opinions of the court on points that will be raised, I think the account may be adjusted to the opinion

without restating at length. The accompanying statement marked 'Statement of Accounts' is made part of this report.

"Respectfully submitted,

"J. M. McWHORTER, *Commissioner.*"

There is returned with this report long accounts, which it is not deemed necessary to state here. To this report the plaintiff filed these exceptions:

"First—The executor is erroneously allowed commissions, viz., three hundred and thirty dollars and ninety-six cents and four hundred and twenty-three dollars and fifty-five cents, making seven hundred and fifty-four dollars and fifty-one cents. The only debt due from this large estate was a contested claim of H. Hedrick, and all the debts due to the estate, with one or two exceptions, were bonds on persons entirely solvent. Yet the executor has had this estate in his hands for over twenty years, and has paid out very little of it to any one except in discharge of costs and attorneys' fees created by his neglect to settle the estate promptly as the law required him to do. He has never made a settlement of his estate, and has paid very little to the legatees; he has not even paid all the specific legacies. To allow the executor commissions in the face of the facts exhibited in said report, is to disregard every principle of law and justice, and pay a premium for inattention and gross negligence, not to say fraud. But the testator, by the last clause of his will, has given him a tract of land 'for his services' as executor, and, therefore, if he had otherwise been entitled to commissions, he cannot have them in this case. Commissions are disallowed an executor when a legacy is given to him. *Jones* v. *Williams*, 2 Call. 85.

"Second—The executor has been improperly credited with the items included in the vouchers set forth and mentioned on page forty-four of said report, and perhaps some others of the same kind. These are items of costs incurred in the prosecution of suits for the recovery of debts due the estate in which a recovery was had for both the debts and costs against the defendants in said suits. The executor is charged with the debts only, and if he is now allowed credit for these costs, he gets them twice—once from the defendants in the actions, and now again from the estate.

"Third.—The executor is erroneously credited with the items represented by the vouchers set forth on page forty-five of said report. These are the items of attorneys' fees and costs incurred in the prosecution of suits on debts due the estate ror which the executor had become liable to the estate *before the suits were instituted.* These debts, on which these items occurred were chargeable, and have been in the report properly charged, to the executor before the date of the institution of the suits in which the said costs and fees were incurred. After the executor, by his negligence or otherwise, had made himself chargeable with these debts, it became a matter of no concern to the creditors and legatees of the estate whether they were ever collected from the debtors or not, the executor would have to pay the same to them, and any suit brought after the liability of the executor had thus become fixed, could only be for the benefit of the executor personally, and to indemnify him against the liability incurred by him to the estate by reason of his failure to collect them within the time allowed by law. It can not be law that he should be charged with the debts on account of his failure to collect according to law, and then allow him to endeavor to collect them at the expense of the estate. In this case the executor is properly charged with these debts, and consequently he has been improperly credited with the fees and costs aforesaid. Code, § 5, ch. 87, p. 509 ; *Southall's Adm'r* v. *Taylor*, 14 Gratt. 269.

"Fourth. Each and all of the alternate statements in said report are erroneous in fact and in law, and should not have been made or considered.

"The legatee or distributee accounts are excepted to by plaintiffs, because—

"First. They are each and all stated upon erroneous principles. In a case like this, the executorial account should be closed at the end of the first year after the qualification of the executor. There were no debts, and, therefore, no necessity for keeping open the executorial account; certainly eighteen months would be ample time for this account to run. At the close of the executorial account, the executor must be treated as the borrower of the fund ascertained for distribution, and in conducting the legatee accounts, the principles governing

the settlement of debts between ordinary debtor and creditor should be observed—that is, the credits and payments should be deducted from the interest first, and from the principal only after the interest has been exhausted by the credit.    *Garrett* v. *Carr*, 3 Leigh 416; *Handly* v. *Snodgrass*, 9 Leigh 490.

"Second. One-third of the personal estate is improperly allowed to the heirs of the widow.    The funds out of which this allowance is made belongs to the residuary legatees under the will of John Piercy sr.    The widow, although she renounced the provisions of the will, never obtained possession of this property (with the exception of what she used during her life, and for this no claim is made by the plaintiffs), and, therefore, by law, the title remained in the legatees by virtue of the provisions of the will.    The renunciation of the will by the widow will not be allowed to break in upon the arrangements of the will, and to disappoint the interests of others under her husband's will, further than is absolutely necessary.    In all other respects, but as regards her, the will ought to be executed as nearly as possible according to the wishes and intention of the testator.    2 Lomax on Ex'ors (205) 349; *Findley* v. *Findley*, 11 Gratt. 434.    In this case there is no necessity to break in upon the provisions of the will except as to the property disposed of by the widow during her life.    As to that which she never had possession of, and which remained intact at her death, the provisions of the will should be carried out, and said property given to the residuary legatees.

"Third. The time represented by the vouchers mentioned in the *second* and *third* exceptions of the executorial account above, and others of the same character, so far as they, or any of them, are allowed in the legatee account, should be excluded upon the grounds set forth in said *second* and *third* exceptions.

"The plaintiffs, therefore, ask that said report may be corrected and reformed so as to conform to the principles asserted in these exceptions.

"A. C. SNYDER.

"*May* 9, 1879.    "*Attorney for Plaintiffs.*"

The defendant George Piercy also filed the following exception to this report:

"George Piercy excepts to the report of Commissioner McWhorter filed in this cause on the 9th May, 1879, upon the following grounds:

"1. The executorial accounts are settled on incorrect principles. The account shows, and the commissioner states on page 7, that he has charged the executor 'with all claims that were solvent, or that could *probably* have been realized had steps been taken to collect the same at proper time.' He could only have been charged with such claims as he collected, or that he failed to collect by reason of negligence. Upon the moneys collected, or that should have been charged to the executor in any given year, no interest could be computed until the end of the year, and then only upon the annual balance; but the commissioner has calculated interest upon many of these sums to a stated period during the current year and then again upon the annual balances. The commissioner has charged the executor with large sums of money which he never realized, and has then charged him with interest on these sums in a manner which could not have been done even had the money been collected by him. The principles upon which the accounts of an executor should be stated, were long ago settled in *Granberry* v. *Granberry*, 1 Wash. 249, and *Burwell's Ex'ors* v. *Anderson's Adm'r*, 3 Leigh 348, which has been clearly departed from in a number of instances by Commissioner Whorter, which will be pointed out at bar more in detail.

"2. Of the sum of two thousand one hundred and forty-two dollars and twenty-five cents charged to the executor as the appraisement bill, one thousand six hundred dollars was the valuation of two negroes with which the executor should not be charged. Both of these negroes were claimed by Mrs. Piercy as her separate estate, and this matter was in litigation in a suit (see papers of John Piercy's Ex'or v. Mary Piercy *et al.*) brought by the executor to have the will of his testator construed and the estate settled, when they were freed by the operation of the war. Again, only one of these negroes was ever in possession of or could be obtained by him. He could not sell this one for the reason above mentioned, and if there had been no controversy as to his ownership, it would have been improper to sell him, for the sale was not neces-

sary for the payment of debts (Code Va., ch. 130, § 17); and before it appeared that it was necessary to make sale in order to distribute the estate, the slave became free.

"3. The executor is charged with too much on item four, bond on Reynolds.

"4. He should not have been charged with the claims against Henson (twenty-three dollars) and Argabrite (sixty-three dollars), for they were claimed and collected by Mrs. Piercy.

"5. He should not have been charged with the bond of three hundred and fifty-eight dollars and sixty-two cents ($457.00) on John Piercy, because it was one of the bonds claimed and held by Mrs. Piercy.

"6. He should not be charged with the bond on John Williams and George Knight, because it has not been collected by him or lost by his negligence, and was one of those claimed by Mrs. Piercy; nor with the bond on Richard Sammons, for the latter reason.

"7. He should not be charged in this account with the bonds on A. H. McClung, Obe C. Martin, John Snyder and Wm. R. Livesay and Sammons & Snyder, because they were a part of the separate estate claimed by Mrs. Piercy.

"8. He should not be charged with the judgment against Madison McClung. This judgment was recovered against the said McClung by John Piercy in his lifetime, and was one of the first liens upon his estate, and, apparently, perfectly good. The executor had placed the management of this matter in the hands of counsel of the highest respectability; but by the act of the Legislature (Code) of 1868, the remedy by *scire facias* was, without notice, reduced from twenty to ten years, and the executor suddenly found himself barred of his right to revive the judgment, when it had until then appeared that there was ample time in which to do so. (See papers in the cause of *Madison McClung's adm'r* v. *Madison McClung's heirs,* and abstracts from record in *Piercy* v. *McClung,* filed as exhibits in this cause.)

"9. He should not be charged with the debt against Hanna, Elizabeth and John Piercy, because he never collected it, and because it had been given by John Piercy in

his lifetime to his son, Samuel Piercy. (See deposition of George Piercy.)

"10. He should not be charged with the debt against John Piercy jr., of seven hundred and eight dollars and forty cents. Suit was brought on this claim before the war. It would seem from the time that the declaration was filed in December, 1860, and the case was prosecuted to judgment against John Piercy's administrator after the close of the war, the case was placed in the hands of counsel learned in the law to take such steps as might be proper to enforce the collection of the claim, and the judgment was filed as a claim against the estate of John Piercy jr., but was disallowed. Viewing this case from the standpoint *now* occupied by the commissioner a different course might have led to a different result; but John Piercy died with considerable personal estate. There did not appear any reason why the suit at law should be dismissed, and a suit in chancery instituted against the heirs of John Piercy jr., and if such a course had been pursued, the claim would have been barred as against the heirs, and, moreover, it appears from the depositions of Messrs. Davis and Price that the course taken had the sanction of the profession generally. Again, the commissioner seems to think that the executor was very wrong in waiting until the account was within a month of being barred before bringing his suit at law. The executor's deposition explains this. The claim was disputed, and the only witness by whom he thought he could establish it was roaming about in the west from place to place, and he could not get his testimony. Not only did it seem improper to sue at an earlier period than he did, but the condition of the estate did not require it. As before stated, the indebtedness of the estate did not require it, and he could not open any distribution account until the end of the second year; besides the pendency of the suit aforesaid brought for a settlement, the law did not authorize him to make distribution until the end of the second year, no distributee having offered to give him a refunding bond such as the law required in case of an earlier distribution. His testator died in 1858; the action at law was brought, it would seem, in December, 1860.

"11. He should not be charged with the Beckett debt.

This claim was entered on the appraisement bill as a 'deed in trust on James Beckett,' and the executor never knew of any other liability growing out of the transaction until after the suit that he brought to enforce this trust deed had been decided against him in the Court of Appeals; and as soon as he ascertained that there was a chance to make any portion of this debt by any other means than were at first employed, he instituted proceedings to that end, and the case is now pending in the Court of Appeals. The statement made by Commissioner McWhorter about the paper, Exhibit No. 3, is wholly unsupported by the testimony, even as that statement now stands, altered from what it was originally when his attention was called to it; that paper don't show any indebtedness. It is a paper with figures upon it, with no statement showing to what they related, and unsigned. The executor says it was brought to him by a third party, who stated to him that John Piercy had sent it, and he states that it was in John's handwriting, but that he never had any conversation with John about it. He says that he did have a conversation with John about the trust deed, and John said 'he was to pay the debt in the trust deed, and that it was all right.' What excuse, therefore, would there have been for the executor if he had abandoned the trust deed and brought an action of assumpsit to recover the sum of one thousand nine hundred and sixty-three dollars and eighty-two cents only? With Beckett declaring that the trust deed was all right and the debt secured by it due, and John admitting his liability for it, would not these plaintiffs have claimed that he was bound for the whole amount of the trust debt, amounting at that date to upwards of two thousand eight hundred dollars instead of one thousand nine hundred and sixty-three dollars and eighty-two cents? (See record in *Piercy* v. *Beckett*, and proceedings in cause upon amended bill, and deposition of George Piercy.)

"12. He should not be charged with the debt against Claudius B. Martin. George Piercy's deposition and the return on the Relehan execution shows that nothing could have been made out of Martin's personal estate, whatever may have been the opinion of Ballard Caraway, who administered on his estate during the war, and who, it seems, had

a lot of Confederate money; and as to his lands, the proceedings in the chancery suit brought to enforce the Relehan judgment, showed so clearly that nothing could be made out of them that the suit was afterwards dismissed. Commissioner McWhorter says in his report that the *plaintiff* filed abstracts from the book of the commissioner of the revenue to show that Martin was solvent. Those abstracts were filed by this defendant, and the purpose explained to be to show that Martin had no other lands than those sought to be subjected in the Relehan suit, and that their assessed value was far below the least of the three amounts ascertained by the commissioner in the suit of *Relehan* v. *Martin* to be a prior charge on said lands. (See report of commissioner and papers in the suit of *Rellehan* v. *Martin* and other exhibits filed.)

"13. In the settlement of the account of the executor with Mary Piercy, interest on the negro kept by her is not properly charged. She should be charged for a longer period.

"14. In the matter of the special legacies, the executor is charged with too much interest.

"15. The executor should be allowed counsel fees, costs, expenses, &c., incurred about the prosecution of the claims which came into his hands, and this without reference to the time at which he was charged with the debts sued on; because he may have rendered himself liable for some of these debts is no reason why he should be disallowed these costs and expenses, for these would have been incurred had he brought suit immediately upon his qualification. The law does not inflict penalties upon fiduciaries simply because they lack in business capacity or in promptitude of action. It only holds them liable in such cases to the losses that reasonable prudence would have avoided.

"16. And for other errors apparent on the face of the report.

"JOHN W. HARRIS,

"*May* 22*d*, 1879.          "*Of Counsel for Exceptant.*"

Afterwards three additional exceptions to this report were filed by the defendant George Piercy, executor:

"The defendant, George Piercy, excepts to the report of Commissioner J. M. McWhorter of May the 1st, 1879.

"1st. Because he has charged the executor with the sale bill of the estate of John Piercy, deceased, including the slaves appraised at the price of one thousand six hundred dollars. The commissioner thinks they should have been turned into money. Slaves at that time were in Virginia a peculiar kind of property. The executor was not to sell them unless the other personal estate was insufficient to pay debts and legacies, and in that case he should sell only so many slaves as will suffice. Code of Va., chap. 130, § 17, p. 597. He could hire them out or keep them and be responsible for the hire, but not sell them.

"2d. Because the executor is charged in said report with what is called the Beckett debt, upon the ground that it might have been collected if proper diligence had been used. What diligence could he require more than was used? He brought suit to enforce the deed of trust against Beckett, but the court decided that the debt did not bind Beckett; that it was extinguished as to Beckett during the testator's life time. This would not make Geo. Piercy, the executor, liable. He then amended his bill and sought judgment against the estate of young John Piercy, and the court decided that the evidence did not show a liability on John; not that the debt was barred by time; not that the attorney had made a mistake as to the remedy, but that the proof was insufficient to establish his liability, and the case is now in the Court of Appeals to test the correctness of this opinion. The case does not involve a question of diligence.

"3d. The commissioner reports a balance of debt (the Beckett debt) of one thousand, nine hundred and sixty-three dollars and eighty-two cents as due from John Piercy jr., but the evidence to sustain that is equally strong to sustain the whole of the Beckett debt, and it appearing that there was no lack of diligence to collect the Beckett debt, this being alleged to be a part of that debt, the item should be overruled.

"4th. Because the other debt on John Piercy jr. of five hundred and sixty dollars is charged against the executor. Upon this debt judgment has been obtained against the

administrator of John Piercy jr., and can be made out of the assets of his estate, either personal or real, the latter of which he can reach by marshalling if necessary.

"5th. Because the executor is charged with debts collected by Mrs. Piercy and claimed by her as her sole property. A suit before the war was instituted to recover this debt of her, and for general directions from the court, and aid in discharging his duties as executor. Why charge these debts to the executor?

"6th. Because commissioner has charged the executor with the property taken by the old lady as part of her thirds and left at her death, and this because he is alleged to be administrator *de son tort* of the old lady. This, however, without proof.

"7th. Because commissioner has charged executor with what is known as the Claudius B. Martin debt, an insolvent debtor. To have *pursued him* by law would have been fruitless, and would have been emphatically throwing good money after bad.

"8th. Because the executor is charged with the Williams & Knight debt. This debt is no doubt good, and will be paid when the other debts of John Williams are paid. Knight's estate is insolvent, and Williams' estate is in the hands of the court.

"9th. Because the Piercy and Gee debt is charged to the executor. This debt belonged to Samuel Piercy, and did not come to the executor's hands as part of the estate of his testator.

"10th. Because the executor is charged with the one thousand two hundred dollars funded in Confederate bonds. The executor had his duties to perform during a very critical period of our country's history, when courts were closed and all rights imperiled. The courts should deal generously with personal representatives under this state of circumstances; but it has not so affected the mind of our worthy commissioner. His first report had some glimmerings of judicial mercy about it, but the last one, however, has none, and from some cause or other he has almost, in making ing out his report, forgotten that he is a judge between the parties and not counsel for either. What could the executor

do with the Confederate money but fund it as other people did with theirs?

"11th. The executor should be allowed the costs of the suit; they were necessarily expended. He was sued by his mother, who obtained an injunction, and he was compelled to seek the aid of a court of equity, especially after the old lady renounced the provisions of the will. What suit, may we respectfully ask, was unnecessarily brought except the suit of *Anderson et als.* v. *George Piercy et als.*, in the bringing of which the executor had no hand.

"PRICE & PRESTON,
*For Geo. Piercy, Ex'or, &c.*"

"*May* 23d, 1879.

To these exceptions the plaintiffs' counsel filed the following reply:

"Reply to S. Price, counsel:

"To 1st Exception.—There were but two slaves, and they were not specifically bequeathed, but were given in the residuary clause of the will to seven legatees. There were no debts to pay. Why should the executor hire these slaves? The law did not require him to hire them, nor to keep them, but it made it his duty to sell them *within a year* after he qualified, and divide the proceeds among the seven legatees. As to one of the slaves, he is credited with, and the same is charged to the widow. The widow never claimed the other, and the executor is, therefore, made to account for it.

"To 2d Exception.—The executor is properly charged with the Beckett debt. After the death of the testator, John Piercy admitted to George Piercy, the executor, that he had assumed to pay this debt. This the executor admits. He also admits that John handed him a paper (Exhibit 3) and admitted that the amount stated thereon, one thousand nine hundred and sixty-three dollars and eighty-two cents, was due from him to the testator. (*Vide* bill of executor in suit againts Beckett *et als.* It is not a fact that the court decided in the suit against Beckett *et als.*, that the proof was insufficient to show that John Piercy was indebted to the estate of testator. The court decided that the proof was insufficient to show that John had *executed* a *bond*, and that as a simple contract debt the claim was barred. This suit was not brought until ten

years after the death of the testator. The debt could have been made.

"To 4th Exception.—The debt of five hundred and sixty dollars can not now be made out of the estate of John Piercy. There is no personal estate, and a judgment against the administrator is not evidence against the heirs, and as to them the account is barred. It was a gross negligence to wait for three years before suit was brought on a contested claim. The excuse given by the executor in his deposition is in fact no excuse. He knew that he could prove the claim by J. J. Reid, and he had the means of knowing where the other witness was, if he needed two.

"To 5th Exception.—The executor is properly charged with the debts collected by Mrs. Mary Piercy. She never had any separate estate. But the executor is credited with these debts in the distribution account, and, therefore, he is not affected by this charge.

"To 6th Exception.—The executor in his deposition admits that he took charge of the estate of his mother, and sold it after her death. He is, therefore, properly charged with what he got, and he is charged with nothing more.

"To 7th Exception.—Ballard Caraway, the administrator of C. B. Martin, says his estate was good. This is better evidence than any filed by the executor. If Martin was not good why did the executor sue his estate ten years after his death? Why put costs on the debt if it was so notoriously insolvent?

"To 8th Exception.—Williams and Knight were both solvent, and neither of them died for more than three years after the executor qualified. If he had used the least diligence, this debt would not now be tied up in a chancery suit.

"To 9th Exception.—Samuel Piercy does not claim the Hannah Gee and Piercy debt. It is a part of the estate.

"To 10th Exception.—If counsel would temper his zeal with a moderate amount of law, he would not think the commissioner had assumed the role of counsel by refusing to allow credit for Confederate money funded under the circumstances disclosed in this case.

"To 11th Exception.—There is no evidence that the

mother of the executor ever sued him; but, on the contrary, it is shown that he sued his mother, or rather filed a bill, and then abandoned his suit and kept the estate for the benefit of himself and his counsel. It is not strange, then, that his counsel thinks it a great outrage that Anderson *et als.* have brought this suit to make them disgorge. The executor is not entitled to either costs or counsel fees for reasons stated in the plaintiffs' *third* exception.

"Reply to J. W. Harris, counsel:

"To 1st Exception.—The executor is allowed by law but one year to settle his accounts when there are no debts, and there were none in this case. After the end of one year the legacies are payable, and the executor is treated as a borrower of the fund, and should be charged with compound interest. Schufflin *v.* ——, 7 Am. D., 507; Franklin *v.* Depriest, 13 Gratt. 257. It was the duty of executor to collect the debts with due diligence, and a year is all the time the law allows. If the debts are not realized within the year, the executor is to be charged with them unless he shows *by proof* that he could not have realized them by due diligence within that time. Where the executor makes no effort he is properly chargeable with all the debts which are not shown to have been insolvent.

"To 2d Exception.—This exception is sufficiently answered in the reply to second exception of Price, counsel.

"To 3d Exception.—No attempt was made to collect the Reynolds debt until ten years after the death of testator, and it was then collected. If the executor allowed it to go into the hands of an insolvent constable, it was his own fault, and he is properly charged with it.

"To 4th, 5th, 6th and 7th Exceptions.—These are considered in reply to the fifth and sixth exceptions of Price, counsel.

"To 8th Exception.—The executor waited ten years for a change of the law before he attempted to collect the judgments against Madison McClung. If respectable counsel had told him he could revive these judgments at the end of one hundred years, he might have waited that time, then come here with the same propriety and asked to be relieved from

the debts because either the law was changed or counsel mistaken.

"To 9th, 10th, 11th and 12th Exceptions.—These are sufficiently answered in the ninth, fourth, second and seventh replies to the exceptions of Price, counsel.

"To 13th, 14th and 15th.—These are sufficiently answered and considered in the exceptions filed by the plaintiffs in this cause."

Numerous depositions were returned with this report which will be noticed so far as necessary in the opinion. On the 18th of June, 1879, the circuit court of Greenbrier rendered a decree in this cause based on this report and exceptions, and in the old chancery suit of George Piercy, executor of John Piercy, against Mary Piercy and others, which was heard with this cause. The following is the decree:

"These causes came on this day to be again heard upon the papers heretofore read, the first upon the report of Commissioner McWhorter, dated May 1, 1879, the exceptions filed thereto both by the plaintiffs and the defendant, George Piercy, executor, &c., the depositions of witnesses, and exhibits filed with said report, and the arguments of counsel. On consideration whereof, the court doth sustain the 1st, 2d, 4th, 5th, 6th, 10th, 11th, 12th, 14th and 15th of the defendant's (George Piercy's) exceptions to Commissioner Whorter's report, signed by John W. Harris, and also the 1st, 2d, 3d, 4th, 5th, 7th, 8th and 11th of said defendant's exceptions, signed by Price & Preston; the items referred to should be carried forward and not now charged to the executor where collections may yet be made; and doth overrule the other exceptions of said defendant; and of the exceptions of the plaintiffs to said report, the court doth sustain the 1st and 2d to the executorial account, and the 2d to the legatee account, and overrule the other exceptions of the plaintiffs, except the second paragraph to the 1st exception to the executorial account, which is sustained. It is, therefore, adjudged, ordered and decreed that the said report be recommitted to Commissioner McWhorter, with instructions to reform and restate both the executorial and legatee accounts as follows:

"1st. He shall not charge the executor with either of the

following debts: twenty-three dollars on Henson, sixty-three dollars on Argabrite, three hundred and fifty-eight dollars and sixty.two cents and seven hundred and eight dollars and forty cents (560) on John Piercy, five hundred and eighty-four dollars on John Williams and George Knight, one hundred and nineteen dollars and thirty-five cents on R. Sammons, one hundred and ten dollars and seventy-one cents on C. B. Martin and one thousand nine hundred and sixty-three dollars and eighty-two cents, known as the 'Beckett debt,' nor shall he charge the executor with the price of the slaves, one thousand six hundred dollars mentioned in the appraisement bill, but he shall charge him with proper hires for the male slave.

" 2d. The executor shall be allowed no commission, the testator having devised to him a tract of land for his services as executor, nor shall the executor be credited with the one thousand two hundred dollars funded by him in a Confederate certificate.

" 3d. The legatee account shall not be opened until the end of the second year after the date of the qualification of the executor, and the executorial account shall be continued and the executor charged with the debts only as they are collected by him, or when it is proven that they are lost absolutely by his negligence.

" 4th. The executor shall be credited with all the attorneys' fees and costs incurred by him in attempting to collect the 'Beckett debt' and the debt of seven hundred and eight dollars and forty cents on John Piercy, and all fees and costs incurred by him in the second of these causes.

" 5th. The executor shall neither be charged nor credited with the property and debts consumed by the widow, but a separate statement shall be made showing what property and debts were consumed and wasted by the widow.

" 6th. No effect shall be given to the renunciation of the will by the widow, except to exclude from the credits to the estate the property and debts consumed by her during her lifetime; and the surplus of the estate, after deducting the pecuniary legacies and one thousand dollars for Mary Beckett, shall be credited to the residuary legatees in the same manner as if the widow had not renounced the will.

"7th. The legatee accounts shall be conducted upon the principles governing between ordinary debtor and creditor.

"8th. The defendant, George Piercy, shall he held and treated as executor *de son tort* of Mary Piercy, deceased, and charged with whatever it is proper to charge him as such executor.

"9th. In all other respects the said commissioner shall be governed in stating and settling the accounts aforesaid by the principles of courts of equity governing such cases, and report his proceedings to this court. Before stating and settling said accounts, said commissioner shall give written notice to the parties, or their counsel, of the time and place of stating and settling the same."

Under this decree the commissioner made his report October 25, 1879, as follows :

"In the cause of *Peter L. Anderson and others* v. *George Piercy, executor, and others,* a decree was entered in your Honor's court on the 18th day of June, 1879, upon the report of your commissioner filed in said cause on the 9th day of May, 1879, and upon the several exceptions filed thereto by the plaintiffs and the defendant, George Piercy, in which decree a number of exceptions for each party were sustained and the others overruled, and the account was recommitted to me with instructions how and in what manner the accounts should be reformed and restated ; a certified copy of said decree is herewith returned marked 'X.' Notice was given to the parties of the time and place fixed for taking the accounts required, service of which was acknowledged by the attorneys for the respective parties. (See paper 'XX.') The cause was opened on the 12th of September, 1879, pursuant to the notice, and kept open to this date. On the 30th day of September the defendant, Wm. Masters, took depositions which are returned marked 'XXX.' The only evidence in it which affects the accounts in the case, in view of this commissioner, is that part in reference to vouchers Nos. 21 and 22 of the legatee account. They both bear date January 25, 1872 ; are for the same amount. No. 21 is in George Piercy's handwriting, and signed by Wm. Masters alone ; the other is for same amount, one hundred dollars, is in the handwriting of Wm. Masters,

judging from his signature, and signed by himself and wife. His explanation of the two receipts is entirely satisfactory and reasonable, and is accepted and acted upon as the correct hypothesis in the premises. In regard to the other matters on which the said depositions are taken, they do not affect the accounts. The colt spoken of has not been charged to Masters in any of the accounts taken, nor has it been charged to George Piercy, as administrator *de son tort* of Mary Piercy, deceased. According to the evidence of Mrs. Arbaugh, the colt was Mrs. Mary Piercy's, and she had given it to her granddaughter, Mary Beckett, or intended it for her, and was taken by Mr. Masters at the same time he took Mary B. away, and according to this deposition of Wm. Masters, the colt was his, and in neither event has it been treated as part of the assets of the estate. Masters and his wife have not been charged with the horse got of the estate, for under the will Mrs. Masters was entitled to it and she accepted under the will. Neither are they charged with the beds as in the inventory of John Piercy's estate; she claimed them as her own as shown by it. As for voucher No. 2 of legatee account for two hundred dollars, being for the horse and beds, the face of the paper itself defeats such theory, and shows that it was not given for property claimed as their own, but that they should be charged with it, and it is charged as a payment on the special legacy to Mrs. Masters. In stating the several accounts, I have endeavored to follow the directions of the decree of June 18, 1879, and think the accounts conform to said decree with, perhaps, one exception, which is corrected at the end of account after the mistake was discovered. The debt against Richard Sammons was directed to be excluded as a charge against the executor at this time, which was overlooked until the accounts were completed, when the mistake was discovered. The amount of the bond and interest accrued is then apportioned among the seven legatees, and their respective accounts modified accordingly. The executor is not charged with any personal property as shown in the inventory, as all the property was disposed of by will or taken by Mrs. Piercy, with the exception of the slaves which constituted the greater part of the property in value, one of which was taken by Mrs.

Piercy, and the other was kept by the executor until some time during the war. The executor is charged with the hire of the negro man for three years at one hundred dollars per year. No proof was taken as to the value of the annual hire, but from inquiries I learned that was about the amount for which they hired. No distribution among the legatees is made in the account until the close of the second year (September 1, 1860). It required what was left in the hands of the executor September 1, 1860, and nearly all for the following year, to meet the special legacies bequeathed, which are first deducted before any distribution is made of the residuary fund. After the accounts were made up, but before closing the report, the defendant, Geo. Piercy, gave his deposition, which may in some degree change the result a little as to the legatee or distributee accounts. His evidence tends to show that the beds returned on the appraisement bill and entered as claimed by Martha Piercy, were really property of the estate and not hers, but just claimed by her because the other girls had each received two beds upon getting married and claimed them on that ground. If these should be charged as a part of the estate at the appraised price, seventy-five dollars, with interest from September 1, 1859, to September 1, 1879, makes one hundred and sixty-five dollars, which divided into seven equal shares, gives to each twenty-three dollars and fifty-seven cents, and Martha Masters' account is charged with the whole, one hundred and sixty-five dollars, less her proportion. This charge or correction is made in red ink that it may be understood what the addition is. At the date the depositions are taken, the executor also files another receipt from Newton Hedrick and wife, paid since the last decree was entered in this cause, for ninety-four dollars, which, with its interest, is added to the indebtedness of said Hedrick and wife. I have found it difficult to get the evidence all in ready for the account in every report made in this cause, and this is no exception to the rule. The accounts are plain and need no explanation, so none is given. At the instance of the defendant, Geo. Piercy, supplemental or alternate statements are made, which accord with what is expressed in the third instruction of the decree of June 18th last, recommitting the said cause to this commissioner, not

charging the executor with debts which he has not collected and which have not been lost to the estate by negligence on the part of the executor. This makes quite a different result, as several large debts are still uncollected but which can be realized, and with which in the first accounts the executor is charged. It does not, however, affect in any manner much the legatee account."

To this report was appended long accounts not necessary to be set out but which will be stated so far as is necessary in the opinion. There was returned in this report a number of depositions not necessary to be stated but which will be referred to as far as deemed necessary in the opinion. George Piercy the defendant excepted to the first statement in this report on the ground that he was charged with the judgment against Madison McClung and the debt on Hannah, Elizabeth and John Piercy, relying on his exceptions in this respect filed to the former report. And the plaintiffs and the heirs of Rebecca Reed, a portion of the defendants' filed thirteen exceptions to this report. These exceptions are as follows:

"First. They here renew the *third* exception to the 'executorial account,' and the *first* and *third* exceptions to the legatee account, filed to the report of said Commissioner McWhorter, dated May 1, 1879, and said exceptions are now taken to the aforesaid report dated October 24, 1879.

"Second. Because the executor is not charged with the slave kept by him.

"Third. The executor should have been charged with the personal property on the appraisement bill other than the slaves.

"Fourth. The executor should have been charged with the debt known as the 'Beckett debt.' This debt was certainly lost by his negligence.

"Fifth. The executor should have been charged with the debt of five hundred and sixty dollars on John Piercy jr., as it was also lost by his negligence.

"Sixth. He should have been charged with the Claudius B. Martin debt of ninety-nine dollars and fourteen cents.

"Seventh. He should have been charged with the Richard Sammons bond for one hundred and ten dollars.

"Eighth. He should have been charged with the bond for five hundred dollars on John Williams and George Knight. He had ample time to collect this debt, and there is no pretense that the parties have not all the time been solvent.

"Ninth. He is erroneously credited with the costs incurred and recovered in the case of *George Piercy, ex'or, &c.,* v. *J. M. Beckett et als.,* in the circuit court and the Court of Appeals; same in regard to attorney's fees in said case.

"Tenth. Martha Masters is improperly charged with three beds valued at twenty-five dollars each; these were hers.

"Eleventh. The interest on the pecuniary legacies is not calculated from the proper time.

"Twelfth. The statement which credits the executor with four hundred and fifty dollars, the estimated costs of this suit, is erroneous to that extent. Said costs should be paid by the executor *de bonis propriis.*

"Thirteenth. The alternate statement in said report, made at the instance of George Piercy, does not conform to the decree ordering the account, and said statement is otherwise unjust and inequitable."

On November 12, 1879, the court rendered this decree in this cause and in the old cause of *George Piercy, executor of John Piercy,* v. *Mary Piercy and others,* which were heard together:

"These causes came on to be again heard upon the papers heretofore read, the report of Commissioner McWhorter, dated October 24, 1879, filed in the first of these causes, the exceptions filed thereto by the plaintiffs and the defendant, George Piercy, executor, &c., and the children of Rebecca Reed, and the argument of counsel. On consideration whereof, it is adjudged, ordered and decreed that the exceptions of the plaintiffs and the defendant to said report of Commissioner McWhorter be and the same are overruled, and the first statement in said report, both as to the executorial and legatee accounts therein stated, except as to the matter of costs of suit, which, the court is of opinion, should be paid out of the common fund, is affirmed; and it appearing from said report, as just confirmed, that there is due from the executor, George Piercy, to the estate of his testator, as of September 1, 1879, the sum of six thousand one hundred

and thirty-five dollars and sixty-five cents, it is, therefore, further adjudged, ordered and decreed that A. C. Snyder, who is hereby appointed a special receiver for the purpose, recover from the said George Piercy and his sureties on his executorial bond, to-wit: Jacob Fulwider, Joseph Piercy, J. W. Hanna, as executor of Wm. Jeffries, deceased, and James W. Johnston, as administrator of the respective estates of Mary Piercy, deceased, and Samuel S. Thompson, deceased, to be levied of the proper goods and chattels of said George Piercy, Jacob Fulwider and Joseph Piercy, and of the goods and chattels of the respective estates of Wm. Jeffries, Mary Piercy and Samuel S. Thompson in the hands of their respective personal representatives to be administered, the said sum of six thousand one hundred and thirty-five dollars and sixty-five cents, with interest thereon from the said 1st day of September, 1879, till paid, and if the same is not paid within thirty days from this date, then said special receiver has leave to sue out of the clerk's office of this court execution for the same. And from the aforesaid sum as collected the said special receiver shall pay:

"First. The costs of the first of these suits.

"Second. The debt due from the estate, amounting to two thousand, five hundred and thirty-nine dollars and thirty-three cents, as specified and set forth on page 34 of said Commissioner McWhorter's report.

"Third. To Samuel Piercy four thousand, seven hundred and seventy dollars and forty-eight cents, and to Wm. Masters and wife, one thousand eight hundred and twenty-five dollars and eighty-four cents, with interest on each of the aforesaid sums from September 1st, 1879, till paid; and,

"Fourth. If there is any balance he shall hold the same subject to the future order of this court, and report his proceedings to court.

"Before receiving any money under this decree, said special receiver shall execute and file with the clerk of this court bond, with security to be approved by him, in the penalty of twelve thousand dollars, conditioned according to law. And it appearing from the said report that some of the legatees have been overpaid, and that the said executor of John Piercy, deceased, is entitled to recover against them respec-

tively for the said excess, to-wit: Peter L. Anderson, the sum of one thousand and sixty-two dollars and eighty-seven cents, Newton Hedrick and Cynthia his wife, the sum of one hundred and ninety-two dollars and nine cents, Rachel Piercy the sum of five hundred and eighty-six dollars and ninety-nine cents, Rebecca Reed's heirs one thousand one hundred and sixty-nine dollars and sixty-two cents, but this case is not now in a condition to enforce said liability against the heirs of said Rebecca Reed—all of which sums bear interest from the 1st day of December, 1879, until paid, it is therefore adjudged, ordered and decreed that the said George Piercy, executor of John Piercy, deceased, recover against the said Peter L. Anderson, Rachel Piercy and Newton Hedrick and Cynthia his wife, the sums respectively aforesaid with interest on the respective sums from the said 1st day of September, 1879, until paid. And it is further adjudged, ordered and decreed that the said George Piercy turn over to said special receiver the bond on John Williams and George Knight, and the bond on Richard Sammons in said report and the proceedings mentioned, and said special receiver is directed to receive and collect the same and bring the proceeds into court subject to future order."

Upon a petition for an appeal and *supersedeas* presented to this Court by Peter L. Anderson and wife, Newton Hedrick and wife, William Martin and wife, Samuel Piercy, Rachel Piercy and the children of Rebecca Reed, deceased, an appeal was granted to the two decrees of June 18, 1879 and November 12, 1879, and a *supersedeas* to a portion of the last decree. The record is a large one and so much of it has been given above as will show fully the character of the controversy. Portions of it which have not been stated will be given in the opinion so far as it is deemed necesssary in order to fully comprehend the opinion of this Court.

*A. C. Snyder* for appellants cited the following authorities: 2 Bro. C. C. 156; 1 Munf. 437; 3 Leigh 736; 8 W. Va. 218; 2 Lom. Ex'rs. s. p. 290; *Id.* 341; 14 Gratt. 269; 5 W. Va. 202; 15 W. Va. 444; *Id.* 733; Lom. Ex'rs. s. p. 477, 483, 561, 562; Code ch. 87 § 5; 3 Paige 182; 9 B. Mon. 540; 14 N. J. Eq. 496; 46 Pa. St. 131; 14 Gratt. 269; 3 Wms. Ex'rs 1805;

3 Munf. 198; 6 W. Va. 417; 2 Rep. Rev. 678; 6 W. Va. 422;
23 Gratt. 100; 1 Mad. 290; 11 W. Va. 416; 2 Dev. & B.
155; 3 Bush 205; 2 Wms. Ex'rs 890 *et seq.*; Code ch. 85 § 26;
2 Gratt. 128; 2 Lom. Ex'rs s. p. 295; 9 La. Ann. 376; Code
ch. 130 § 17; 2 Lom. Ex'rs s. p. 341; *Id.* 351; 1 Binn. 194;
2 Freem. Chy. Cas. 11; 4 Desau. 463; 5 N. H. 492; 5 Ves.
839; Code Va. p. 606 § 32; 9 Leigh 484; 3 Leigh 416; 39
Ala. 716; 15 Wis. 1; 15 Ala. 335; 40 Ala. 421; 5 Gray 26;
1 Ala. Sil. Cas. 612; 37 Ala. 683; 28 N. H. 48; 48 Ala. 353;
29 Md. 538; 7 Gratt. 136; 5 N. H. 492; 5 Johns. Chy. 534;
2 Lom. Ex'rs 490; 4 Munf. 219; 2 H. & M. 26; 4 H. & M.
431; 4 Bush 346; 13 N. J. Eq. 293; 5 Binn. 138; 16 N. J.
L. 227; 23 Md. 273; 20 Ark. 526; 3 Harr. (Del.) 469; 8 La.
Ann. 277; 1 Johns. Chy. 620; 2 Lom. Ex'rs 561; 6 Leigh
271; 2 Gratt. 117; 2 Kent Com. 231; 2 Rob. 664.

*J. M. Mc Whorter* for children of Rebecca Reid cited 14
Gratt. 269; 27 Gratt. 42; 14 Am. Dec. 65, and 7 Am. Dec.
507.

*John W. Harris* for appellee cited the following authori-
ties:    7 Gratt. 160; 9 Gratt. 541; 11 W. Va. 399; 12 W. Va.
428; 2 Gratt. 116; 14 Gratt. 275; 5 W. Va. 199; 15 W. Va.
444; 4 Johns. Chy. 629; 1 Tuck. Com. 440; 7 Gratt. 160;
Code Va. ch. 130 § 17; 12 W. Va. 491; 9 Gratt. 398; 1
Wash. 249; 3 Leigh 348; 5 Gratt. 6; 2 Rob. 664; Law Rev.
Sept. 1880.

GREEN, JUDGE, announced the opinion of the Court:

The only difficult questions really involved in this record
are:    What are the principles involved in the settlement of
an executorial account and their application to the facts and
circumstances appearing in this cause?    And these are the
only questions, which have been argued in this cause in this
Court.    It is true, the answer of the executor sets up two
objections to the consideration of the cause by the circuit
court.    The first is, that there was then pending in that
court another suit brought by George Piercy executor of
John Piercy sr., in which there had been a decree for the
settlement of his executorial account; and such an account
had in that cause been settled by a commissioner of the court

and reported to the court, and no action had been taken by the court thereon. This objection was not presented in a proper form. The pending of such prior suit should be presented by a plea or motion to dismiss as a preliminary question. As an incident among other matters in an answer on the merits it will not avail. When the defence is duly made and established, the court will dismiss the bill; or if the prior suit be in his court and *defective*, he may order a dismissal of that and permit the plaintiff to proceed on his new bill. Cooper's Equity 278. Walford's Pleadings 199.

In this case this Court cannot tell, whether the first writ was *defective*, as the whole of the record is not before us; but it is highly probable it was, as during the war all of the papers in it had been lost or mislaid, and though they were subsequently found, it is very probable that many of them were no longer in the bundle; and this is rendered the more probable by the fact, that Commissioner Harlow's report in this first cause settling then the accounts of the executor of John Piercy sr., was made in October, 1860, and when this same suit was brought in March, 1878, more than seventeen years after, no action had been made on this report, and no order had been made in that cause for nearly eighteen years. It had been liable to be dismissed on motion after more than ten years; and the probability is that it had not been dismissed, because, as alleged in the bill, it had been abandoned. And this is rendered still more probable as the main object of that suit was to separate the estate of John Piercy sr. from that claimed by his widow Mary as her separate property, and this had been rendered no longer necessary as all persons interested in her estate had agreed that her estate should be distributed by the executor of her husband as though it was his estate, except as to a certain sum directed to be paid to an omitted grandchild in the will of John Piercy sr. The first decree rendered in this cause directed Commissioner McWhorten to reform the report made by Commissioner Harlow in the first cause; and thus the labor, which had been spent on the first suit and its costs, were utilized, so far as they could be, in this cause. For these reasons it is obvious, that this cause was properly retained and acted upon by the circuit court, the pendency of the

prior suit not having been presented in the proper form; and even had it been, the court under the circumstances ought not for this reason to have dismissed this cause.

Again it was objected, that the bill in this cause was multifarious asking for the settlement not only of the accounts of George Piercy as executor of John Piercy sr., but also as executor *de son tort* of his widow, Mary Piercy. There was nothing in this objection. The paper signed and sealed by George Piercy as well as all other persons interested in the estate of Mary Piercy filed with the bill proved despite the denial of George Piercy in his answer, that he was executor *de son tort* of Mary Piercy, and by this paper with the exception of one thousand dollars to be paid Mary E. Beckett his entire estate was to be distributed to the same persons and in the same manner as the estate of John Percy sr. It was therefore obvious, that it was proper, that in this cause George Piercy should not only settle his accounts as executor of John Piercy sr., but also his accounts as executor *de son tort* of Mary Piercy, the parties interested in each estate being the same, and the two estates, as the record shows, being so intermingled as to render it difficult to separate them accurately. In truth the separation of them was the principal object of the first suit instituted by George Piercy as executor of John Piercy sr. This separation accurately afterwards became comparatively unimportant, when those interested in her estate agreed, that it should be distributed among the same persons as the estate of John Piercy with a specified exception and be treated in fact as a part of his estate and administered by the executor of John Piercy sr. This itself would have prevented the pendency of this suit, formerly brought by George Piercy as executor of John Piercy sr., from being a sufficient ground for the abatement of the present suit, brought by legatees of John Piercy sr. against George Piercy, his executor, even if this objection had been presented in proper form. For the main object of the first suit was for entirely different object from that of the second suit, and they could not properly be said to be for the same cause of action, and they did not really get the same relief.

It remains on the merits of this case to determine the

principle, on which an executor's account should be settled. And first, with what debts should be charged, and for what payments made by him should he be allowed credit? The general rule is, that he should be charged with all the assets of his testator, which either actually come into his hands and are collected or converted, and also with all the assets of his testator, which would come into his hands, and with all debts, which by the use of diligence he ought to collect. The executor should be charged with debts collected, not when they become due, or when they could have been collected by reasonable diligence, but only at the time he actually receives them. *Burnley's adm'r* v. *Duke &c.*, 1 Rand. 113. The executor is regarded as having converted the assets, when he exchanges a debt due his testator for some other debt due to the debtor; and he should therefore be charged with such debt so exchanged, whether it were a good debt or not. See 2 Lomax on Executors 295; *Bass* v. *Chambers*, 9 La. Ann. 376. If when he settles his account, he has not received a debt, and it appears, that it has been lost through his negligence or want of proper diligence, he should be charged with such debt as of the time, when he ought to have received it, had he used due diligence. The mere want of proper diligence on his part or his negligence does not make debts due his testator the property of the executor, and therefore, if when he settles his accounts, he can show, that a particular debt included in the inventory and not returned as worthless or doubtful was nevertheless a debt, which could not have been collected by the use of diligence either because of the actual insolvency of the debtor, or because he had a substantial defense, or because though when the inventory was made the debt was believed to be due, yet if it turns out, that it was not actually due, he ought not to be charged with such debt. For it remained the debt of his testator, though the administrator was negligent in not attempting its collection or in not bringing suit upon it with the promptness, which he ought to have exercised. See *Cavendish* v. *Fleming*, 3 Munf. 198; *Reitz & Co.* v. *Bennett et als.*; 6 W. Va. 417.

When however a debt is returned in an inventory of an executor without its being noted as either worthless or doubtful, it will be presumed, when he settles his accounts,

after ample time has elapsed for him to have collected such debt, that he has in fact collected it in full; and he should be charged with such debt as if collected at such reasonable time, as it ought to have been collected in. See *Dillard* v. *Tomlinson*, 1 Munf. 183. In such case, as the assets are traced to his hands, it devolves upon him to show, that they have not been collected, and why they have not been collected, and not upon the legatees to establish misconduct or negligence on his part. *Graham* v. *Davidson*, 2 Dev. & B. (N. C.) Eq. 155; *Hickman* v. *Thornburg*, 3 Bush. 205; *Lawson* v. *Copeland*, 2 Bro. 156; *Estill & Eakle*, v. *McClintic*, 11 W. Va. 416.

Although I have seen no decided case so holding, yet upon principle, according to the rule, that when a debt has not been lost through the negligence of an executor, he should not be charged with it, if it has not been actually received, or until it is actually received, it seems to me, there should be an exception, when it appears, that a debt due the estate is good, and for a long time has remained uncollected through the gross negligence of the administrator, and no reason can be assigned, why he has not collected the same. The court might properly under some circumstances in the settlement charge him with such debt, as though he had collected it, leaving him to reimburse himself out of the debt when collected; but this would under any circumstances be done, not because the gross negligence of the executor in instituting suit to collect such debt would cause this debt to be regarded as converted assets, after the the time had elapsed, in which it should have been collected, but because as executor he is responsible as for a wrong done, when he failed to collect such a debt through gross negligence. And this being the basis of his responsibility in such case, it is obvious, when the debt is still good and has not been lost by negligence, the executor should not be charged with it, before it is actually collected, provided he has any reasonable excuse for the delay; and as no real loss has been sustained by the estate, this indulgence of a debtor, who was and remains good, should not be a ground for charging the executor with the debt under any circumstances, unless it has been continued for a very unreasonable time uncollected, and un-

less his failure to collect the debt is gross and inexcusable negligence. Where this gross and inexcusable negligence exists, though the debt be not thereby lost, it seems to me, the debt may properly under some circumstances after the lapse of a long time be charged to the executor, as if he had collected it; but an executor ought reasonably to be allowed a large discretion in the management of an estate as to the time, when he should collect perfectly good debts; and he should be but rarely held to responsibility for such indulgence, unless thereby the debt is lost. By such unreasonable indulgence he becomes responsible for the debt; but he ought not except in extreme cases to be charged with the debt till collected, unless it has been actually lost by such negligence. These views seem to be substantially the views taken by the court in *Davis* v. *Newman,* 2 Rob. 674, 675.

It may be regarded as settled law in this State and Virginia, that in settling an executorial account proper an executor ought not to be charged with interest from the day of each receipt of money; for he might not be able to pay it out to a creditor or legatee on the day he receives it, or the payment might be suspended by disputes among creditors. The accounts ought to be closed at the end of each year, and interest allowed on the balance due at the end of each year, till the whole transaction is closed. Such interest is not carried to the account of the succeeding year as is done in an account between debtor and creditor, so as to apply the interest to the payments made during the succeeding year. In executorial accounts both here and in Virginia the payments are applied to the discharge of principal and not of interest, so long as any principal is due; and the interest is brought into the account only at the close of the transaction. See *Granberry* v. *Granberry* 1 Wash. 246; *Sheppard* v. *Starke,* 3 Munf. 29; *Burwell* v. *Anderson,* 3 Leigh 362. While this is the general rule for settling an executor's account, it is not an invariable one; but there is in this case no necessity to point out the exceptions to it, as they are inapplicable to the case under consideration. These rules for the settlement of an executorial account are continued, till there has been a reasonable time allowed for the payment of the debts of the estate, when the executorial account proper should be closed,

and the balance then due from the executor should be charged against him as a borrower; and until the distribution of the estate from that time the account between him and the residuary legatees should be adjusted as an account between debtor and creditor.    See *Handley* v. *Snodgrass*, 9 Leigh 430; *Garret* v. *Carr*, 3 Leigh 416.

The Code of Virginia ch. 130 § 17 p. 597 provided, that an executor should not sell slaves, unless the rest of his personal estate, other than privileged legacies, was insufficient.    And hence an executor could not be responsible for the loss of a slave, the result of the war, if such slave was not specifically bequeathed, and it was unnecessary to sell the slave to pay debts.

An executor should be allowed as credits all proper disbursements made by him including costs and reasonable counsel-fees in all debts due the estate, on which, it was his duty as a prudent man, at the time he did sue, to institute suit; nor should such costs and reasonable fees paid by him be refused to be credited to him, because he has so unreasonably delayed the institution of the suit as to render it doubtful, whether the debt could then be collected.    If he as a prudent man should even then institute suit, because the debt was still not desperate, he should be allowed such costs and reasonable fees, though the debt should not be made, and though he may under the rule, which we have stated, be properly chargable with the debt itself as lost by his negligence in not instituting the suit as early, as he ought to have done, and when it could have been made.    If when the suit was instituted whether promptly or not, there was no reasonable prospect of its being available, he ought not to be credited with expenses incurred in such unavailing effort to collect a desperate debt.    See *Sanborn* v. *Goodhue*, 28 N. H. 48; *Cooke* v. *Cooke*, 29 Md. 538; *Mitchell* v. *Trotter*, 7 Gratt. 136. There are legitimate deductions from the rule, which we have laid down, that except in an extreme case an executor ought not to be charged with a debt, which he has not actually collected, merely because he has been negligent in attempting its collection or in instituting suit to collect such debt.

The general rule is, that interest on a general legacy is payable from one year from the testator's death.    *Sitwell* v.

*Bernard*, 6 Ves. 520; *Entwistle* v. *Markland*, note to 6 Ves. 528; *Pearson* v. *Pearson*, 1 Sch. & Lef; *Shobe's ex'or*, v. *Carr and wife*, 3 Munf. 10; *Bradford et al.* v. *McConihay et al.*, 15 W. Va. 765. But if the legacy is given by a parent to a child, the interest should generally be computed from the death of the testator. See *Hite's ex'or* v. *Hite's legatees*, 2 Rand.; and this rule is not affected by the fact, that the legatees, the testator's children, are also the residuary legatees. See same case.

It may be regarded as the settled law in this State and in Virginia as well as in England, that when an executor voluntarily pays a legacy, he can not afterwards maintain a bill to compel a legatee to refund, unless it becomes necessary for the discharge of debts; and when the executor is under the impression, that he can collect a large debt supposed to be due the estate, and it turns out, that he is unable to do so, though the executor be not guilty of culpable negligence with reference to the debt, and is therefore not chargeable with the whole amount of the debt; yet if under his misapprehension with reference to the debt he pays any legatee more than he should pay, he cannot recover any part of what he has paid him, but such over-payment in this State and in Virginia will not be regarded as an admission of assets in his hands, so as to require him to pay to others more than what is coming to them of the amount actually received by him. This was the conclusion reached in *Davis and others* v. *Newman*, 2 Rob. 664, after a review of the English and all the Virginia decisions in any way bearing on the subject.

In the subsequent case of *Nelson, ex'or*, v. *Page et als.*, 7 Gratt. 160, it appears from the statement of the case, that the executor had voluntarily operpaid certain legatees, and the court below decreed a refunding by them of the amount overpaid; and the executor took an appeal, principally because he claimed, he had been improperly charged with a certain debt, which he never collected, and with which he was charged, though he claimed, that it had not been lost by his negligence. The appellate court reversed the decree, because it held, that the executor had been improperly charged with the debt, and expressly waiving any consideration of any other errors alleged to have been made by the

circuit court it reversed with costs the decree below and remanded the cause with instructions to recommit the account to a commissioner to restate the same, in which restatement the executor was directed not to be charged with the debt held to be improperly charged to him, and to correct any other errors apparent on the face of the account, for the proper enquiries in reference to the specific legacies, and for further proceedings. Because in this opinion and decree nothing was said by the court in reference to the over-payment made by the executor to certain legatees, it is insisted, that the action of the appellate court is to be regarded as an approval of the action of the court below in directing such over-payment to be refunded, and therefore to be an over-ruling of the principles laid down in *Davis* v. *Newman*, 2 Rob. 664. An examination of the latter law will show clearly that it was not the purpose of the court to overrule it. It is true this case is referred to in the argument in *Nelson* v. *Page*, yet no sort of reference was made to it by the court in their opinion, and they in express language waive the consideration of all questions in the case except the one question, whether the executor ought to be charged with a particular debt. It is obvious, that they did not to any extent consider the question, whether an executor can recover of a legatee for a surplus paid him on his legacy, when such refunding is not necessary in order to pay debts. And whatever effect the decree of the appellate court might possibly have in that case in the court below, it obviously cannot be regarded as an authority overruling the case *Davis* v. *Newman*, which was the unanimous opinion of the court after a careful consideration of the questions.

We will now apply these principles to the cause now before us for our consideration. And first, the circuit court in its decree of June 18, 1879, held, that the executor of John Piercy sr. should not be charged with the debt on Hinson of twenty-three dollars, debt on Jacob Argabrite of three hundred and fifty-eight dollars and sixty-two cents. There were bonds which Mary Piercy in the first chancery suit brought against her and others claimed were given for eggs, butter, &c., which under an arrangement with her husband, John Piercy sr., were to belong to her for her supervision as the

proceeds of her care and labor; and these bonds were in her lifetime collected by her, and as under the agreement executed by all the parties interested the whole of her estate, excepting one thousand dollars is to be distributed and administered by the executor of her husband, as if it were a part of his estate, and her estate has been settled in this suit with George Piercy, his executor, as her executor *de son tort*, it was right for the court to hold, that these debts collected by her should not be charged to the executor of John Piercy sr. in the settlement of his accounts as such executor.

The circuit court in said decree also held, that the executor of John Piercy sr. should not be charged with the debt due from John Piercy jr. of seven hundred and eight dollars and forty cents. This debt had its origin in five hundred and sixty dollars money loaned by the testator to John Piercy jr. February 6, 1856. In December, 1860, more than three years after his qualification as executor of John Piercy sr., George Piercy as such executor brought an action of *assnmpsit* for this debt. When this suit was brought, nearly five years had elapsed since the cause of action occurred, and it would have become barred by the statute of limitations in less than two months. When the executor of John Piercy sr. qualified, more than three years before that time, he knew, that this was a disputed debt, and that it could not be collected except by suit; and he also knew, that John Piercy jr. owned but a small amount of personal property, and that the real estate owned by him was claimed by the executor to be liable to the payment of the Beckett debt, the principal of which was claimed to be two thousand seven hundred and twenty-seven dollars and eight cents. He also believed, as he admits, that the entire estate of John Piercy jr. would not pay his debts, if these two claims were held valid. It was therefore his duty to institute this suit for this five hundred and sixty dollars loaned promptly, as it was obvious, that its payment would be endangered, if suit was delayed; but instead of so doing he delayed instituting the suit for more than three years. Had he brought this suit promptly, he would have obtained a judgment on it in the lifetime of John Piercy sr. in all probability, as he did not die till December,

1865.   Had he obtained such judgment in his lifetime, it would have been a lien on the factory-property owned by him; and as it has been held, that this property was not liable to the payment of the Beckett debt of two thousand seven hundred and twenty-seven dollars and eight cents of principal, it is certain, that the debt of seven hundred and eight dollars and forty cents could have been made out of this property, though John Piercy sr. left but a small personal estate.

As it was, this action of *assumpsit* brought in December, 1860, just before the war, was undecided at the death of John Piercy sr., in December, 1865, shortly after the close of the war; it was not revived against his administrator for nearly three years in September, 1868, and as he left but a small personal estate, the judgement against the administrator of John Piercy for five hundred and sixty dollars with interest from April 1, 1856, remained unpaid, and but a small portion of it, if any, can now be made; for of course this judgment does not bind his real estate, and it cannot now be rendered liable for this debt, as it was barred as to the heirs, when this judgement was rendered.   It is true, the counsel of the executor of John Piercy sr., in this writ says, that he believed, if he obtained this judgment against the administrator of John Piercy sr., it would bind his real estate and could then be made.   But there was no basis for such an opinion; for it had been the settled law of the State of Virginia and of this State for more than half a century, that as there is no privity between an administrator and an heir, a judgment against the former does not bind lands in the hands of the heir, and is not even evidence of the existence of the debt against the heir.   See *Shields* v. *Anderson,* 3 Leigh 736; *Laidley* v. *Kline,* 8 W. Va. 218.

It follows therefore, that this debt against John Piercy jr. was really lost to the estate by the failure of the executor of John Piercy sr. to institute a suit on it promptly after his qualification as executor; and according to the principles, which we have stated, he ought to be charged with this debt, unless he can show a satisfactory reason, why under the circumstances, which we have stated, he did not act, as a prudent man should have acted, and institute promptly a suit for this

debt. He failed to give any satisfactory reason for this unreasonable delay, which resulted in loss to the estate. His excuse for his delay was, that he thought he did not have proof enough, which he could readily get, to sustain his action as one of his witnesses, A. J. Piercy, was absent from the State. But he fails to show, that there was any difficulty in either obtaining his presence at the trial or in taking his deposition. On the contrary the evidence shows, that he could readily at any time have ascertained his residence, and even probably have obtained his attendance at the trial; and the only excuse offered for not so doing is, that they were expecting him to return to Greenbrier county, West Virginia, to reside. This would have been perhaps a sufficient excuse for delaying the institution of the suit for a brief time; but certainly no prudent man would have delayed the suit for such a reason more than three years. We can therefore attribute this long delay only to gross negligence of his duty by the executor; and as it resulted in a large loss to the estate, the executor should be held responsible for the debt; and if any portion of it should hereafter be made out of the personal estate of John Piercy jr., such portion of it should go to the executor to indemnify him, as far as it will go, for the loss he will sustain in favor of this debt charged to him.

But while the executor should have been charged with this debt, he ought to be allowed as a credit the costs of the suit, which he brought for its recovery, which he has paid, as well as the reasonable fees, which he has paid counsel in this suit; for though he did not bring this suit till December, 1860, yet even then the debt was not desperate, and it was even then his duty to endeavor to have it collected by suit; and if John Piercy sr. had lived till the judgment was rendered, the debt might still have been made.

The circuit court therefore erred in directing in its decree of June 18, 1879, that this debt should not be charged to the executor.

In this decree the court also directed that the debt on John Williams and George Knight should not be charged to the executor. In this it did not err. This was a bond for five hundred and eighty-four dollars which was due November 12, 1849. The obligor, John Williams, was solvent; and the debt could

have been collected. The other obligor, George Knight, was at the time of his death insolvent, his estate paying but about one-third of his debts. This debt is still perfectly good; and it has been placed in the hands of a commissioner to collect. No suit was brought for a long time on this bond; but as it was one of the bonds claimed by the widow, Mary Piercy, as belonging to her as her separate estate, this furnished some excuse for the delay in the collection of the debt, a delay, which was rendered less negligent by the fact, that it was perfectly good, and that it could be regarded as a debt not endangered by delay in its collection. A prudent man could therefore not improperly delay the collection of this debt, till the dispute was settled about where its proceeds were to go, and this was not determined till the death of Mary Piercy in 1868.

Under these circumstances according to the principles, which we have laid down, the court properly held, that this debt ought not to be charged to the executor, as no part of it had been received by him, and no part of it has been lost by his negligence.

In this decree the court also directed, that the debt of R. Sammons should not be charged to the executor. In this the court erred. This was a bond of one hundred and nineteen dollars and thirty-five cents and the executor in his deposition states, that in 1859 or 1860 he exchanged this bond for one on A. J. Piercy for about the same amount; and this last named bond had not been paid. This exchanging of this bond is, as we have seen, a conversion of it to his own use; and the executor ought therefore to have been charged with it and the interest on it as of the time he thus exchanged it for another bond. This second bond is not the property of the estate but the individual property of the executor.

The court also directed, that the executor should not be charged with the debt of one hundred and ten dollars and seventy-one cents on C. B. Martin. The counsel by an agreement filed in this Court have requested us not to act on the question, whether this debt ought to have been charged to the executor or not, and have desired us, when this cause is recommitted to the circuit court, to direct a further

enquiry to be made as to the propriety or impropriety of this debt being charged to the executor; and this course will be taken.

The court also directed, that the executor should not be charged with the price of either of two slaves, each appraised at eight hundred dollars.   This was a proper direction on the part of the court.   One of these slaves was claimed by Mary Piercy, the widow, who held it; and that slave never came under the control or into the possession of the executor but died, while claimed and held by Mary Piercy as a part of her estate.   The other slave was hired out for several years by the executor and was lost during the war through the interposition of the Federal soldiery.   As this slave was by this will disposed of to some legatees by the residuary clauses it was not the duty of the executor to sell it, there being no debts or monied legacies, which rendered the sale of this slave necessary.   There is no evidence, that there was any agreement among these seven legatees, that any one of them should take this slave at any named price; and the executor therefore performed his duty in hiring it out till there was a final distribution of the estate, and before this the slave was lost by causes, over which the executor had no control.

Finally the court directed, that the executor should not be charged with the Beckett debt or with the one thousand nine hundred and sixty-three dollars and eighty-two cents, the first thing with which the commissioner had charged the executor.   The court did not err in this direction to the commissioner.   The facts with reference to this debt have been briefly stated in the statement of this case, which precedes this opinion.   I do not regard it necessary to state them in greater detail, as the question for our consideration in this cause now is, not whether this debt had a real existence at the time of the death of the testator, or whether, if it had, it was a lien on the factory-property or not, or whether it was a mere claim against John Piercy jr. by reason of a promise by him to the testator, John Piercy sr., to pay it, for which an action of *assumpsit* would lie.   The second of these questions has been decided by this Court in *Piercy's ex'or* v. *Beckett et als.*, 5 W. Va. 199, when it was held, that if this debt had an existence at the death of John Piercy sr.,

it was not a lien on the factory-property, for though the bond of Beckett, which represented it, was secured by a deed of trust on this factory-property, yet this bond had been canceled and surrendered in the lifetime of John Piercy; and if the debt had any existence, it was only by virtue of a promise by John Piercy jr. to pay it to his father. It is useless now to enquire, whether such a promise was ever really made, on which an action of *assumpsit* or of debt would lie, as such action was never instituted and this action has now been long since barred by the statute of limitations.

The only question for us now to decide is, whether on the facts appearing in this record the executor as a prudent business-man in the exercise of proper diligence was bound to promptly institute an action of *assumpsit* against John Piercy jr. for this debt.

The commissioner on April 20, 1874, reported: "To ascertain whether John Piercy jr. undertook to pay the Beckett debt mentioned in the bill, and, if so, whether by bond or parol the testimony of quite a number of witnesses was taken. From this testimony your commissioner had no difficulty in deciding, that John Piercy jr. did not undertake to pay said debt, but to determine whether he executed his bond for the same was quite difficult." He then reviews the testimony at considerable length and concludes: "The above is the substance of the testimony taken before your commissioner. While he cannot say, that he is entirely satisfied, that the execution and delivery of the bond by John Piercy jr. to John Piercy sr. is clearly established, still he is of opinion, that the weight of the testimony goes to prove, that it was; and he therefore reports accordingly." This bond he reports, if executed, was executed in the year 1856, or in 1857, or in 1858, and therefore was not then barred by the statute of limitations. It is therefore obvious, that if the same conclusion had been reached as to the facts by the executor of John Piercy sr., as was reached by the commissioner, he ought not as a prudent man to have brought an action of *assumpsit* against John Piercy jr. for this debt, for he must according to this view of the facts have failed in such a suit, though he might perhaps have successfully brought a suit in chancery against John Piercy jr. to set up this supposed lost

bond, which the commissioner thought he had given in lieu of this Beckett bond, which had been surrendered and canceled; but unfortunately for the appellants the circuit court of Greenbrier in its decree of June 22, 1876, in the chancery cause brought to enforce this debt by the executor as a lien on the factory-property adjudged: "that the plaintiff has not established by proofs in the cause his right to recover from the estate of John Piercy jr. the claim of two thousand seven hundred and twenty-seven dollars and eight cents (the Beckett debt) or any part thereof; that the evidence is insufficient under the circumstances to satisfy the court the said John Piercy jr., ever executed his bond to his father for said debt. Nor is there sufficient evidence to charge said John Piercy jr's. estate by simple contract for said debt. If such ever had any existence it is now barred by the statute of limitations." It is therefore obvious, that if the executor of John Piercy sr., had reached the conclusion as to the facts, which the circuit court reached, which we must suppose, he might have done as a prudent man, he could not prudently have instituted either an action of *assumpsit* or a chancery suit to enforce the supposed lost bond against John Piercy jr., the probabilities being, that he would have been defeated in either suit.

These seem to have been also his views and those of his counsel; and he accordingly in 1868 instituted a chancery suit to establish and enforce this Beckett debt as a lien on the factory-property; and the circuit court was of opinion, that he established by the proofs, that it was such lien and was proceeding to enforce it, when an appeal was taken to this Court, and the decree of the circuit court was reversed, and it was declared, that this debt was no lien on the factory-property. The mere fact, that the circuit court of Greenbrier sustained the executor's bill in this case, is abundantly sufficient to justify the executor in the institution of this chancery suit. To hold otherwise would be to make an executor an insurer of his ultimate success in every suit brought by him, no matter what his reasons may have been for supposing he could successfully maintain the suit, when it was brought. If these views of the circuit court and this Court are correct, it is obvious, that this Beckett debt never

could after the death of John Piercy sr., have been recovered either by using common law suit or by using chancery suit, and therefore no loss could have resulted to the estate from the failure of the executor to sue promptly. The delay in bringing the suit before the war was probably produced by the difficulty of proving these facts and the uncertainty, which after careful examination still existed as to what were the real facts. The war delayed the institution of the suit for another four years; and the inherent difficulty in determining what course ought to be pursued in this case probably produced the further delay after the war. But though the executor may not be excused by these circumstances in delaying the institution of any suit for so long a time and might be responsible for this debt, if it had been lost by such delay, yet he can not be held responsible under the existing facts, because it is obvious, that had he instituted the suit, which he did institute, probably on his qualifying as executor, and the circuit court had, as it did, decided the case in his favor, an appeal could have been taken to this Court five years after the rendition of the decree, and it would have been reversed by this Court, and being before such reversal an action of *assumpsit*, which on the evidence might possibly have been sustained, would have been barred by the statute of limitations.

So that in no view, which we can take of the case, has any loss been sustained by the estate by the delay of the executor in the institution of the chancery suit, which he brought in 1868, to make this debt; and he was when he brought this suit, fully justified in bringing it, and had in the judgment of a prudent man and even of the circuit court reasonable ground to suppose, that he would succeed in making the debt. Upon the principle we have stated therefore the circuit court did not err in holding, that he ought not to be charged with this debt or any part thereof, and ought to be credited with the costs and reasonable attorney's fees paid by him in this suit.

The circuit court in its decree of June 18, 1879, decide that the executor should be allowed no commission, the testator having devised him a tract of land for his services as executor. This action of the court was obviously right. It also decided,

that he should not be credited with one thousand two hundred dollars funded by him in a Confederate certificate. This too was obviously right; for the executor was under the circumstances totally unjustifiable in so investing the money of the estate. In fact he had no right to invest it at all, but should have paid any money which he had no use for, to the legatees.

The third instruction given the commissioner in this decree of June 18, 1877, is in proper accordance with the principle, which we have laid down, except that under the circumstances of this case the legatee's account should have been opened at the end of the first year instead of at the end of the second year. The only debt due from the testator was one of some four hundred dollars due to Henry Hedrick. The exact amount of this debt was known; it was controverted; and it was some ten years before the controversy was ended. But the debt being small and the amount of the claim known, there was on the principles, which we have stated, no propriety in keeping open the executorial account because of the existence of this small claim. The executorial account as to mode of stating should have been promptly closed at the end of the first year; and the legatee's account opened. With this modification this third instruction given by the court was correct.

The fourth instruction in this decree to the commissioner is, as we have seen, in all respects correct. The fifth instruction in said report is also as we have seen correct. And the sixth, seventh, eighth and ninth instructions to the commissioner are also, from what we have already said, correct.

The several exceptions by the executor George Piercy to the commissioner's report named in the said decree and in it sustained by the court were properly sustained, as appeared from the principles we have stated and what has been already said, excepting only the 10th of these exceptions, which was to the executor being charged with the debt of John Piercy sr. of seven hundred and eight dollars and forty cents, and that part of the 6th exception, which applied to the debt of Richard Sammons. This debt, we have seen, was properly chargeable to the executor; and so much of this 6th exception, as refer to it, should have been overruled as well as the

10th exception. The 12th exception with reference to the debt of C. B. Martin we do not act upon and do not decide, whether it ought or ought not to be sustained, as this debt for reasons, which we have stated, is left open for further enquiries, when this cause is recommitted. As to the 14th of these exceptions, which is, "that in the matter of the special legacies the executor is charged with too much interest," from the imperfection of the record as sent up I am not certain what interest on these special legacies were allowed; but I can hardly suppose, that the executor was charged with too much interest on these legacies. It is more probable that enough interest was not allowed to the special legatees. The special legatees, who were children of the testator, were entitled to interest on their legacies, as we have seen, from the death of the testator. The bond of John Piercy sr. of three hundred and fifty-eight dollars and sixty-two cents, named in the 5th exception by the executor, was claimed and held by Mary Piercy as her separate estate; and for reasons, which we have given, the court properly sustained this exception.

Upon the principles which we have stated, and what has been heretofore said the additional exceptions signed by the counsel Price and Preston for the executor, which were sustained by the court in its decree of June 18, 1879, were all properly sustained excepting the fourth in reference to the debt of five hundred dollars due from John Piercy jr., which which should have been overruled, and excepting perhaps the seventh referring to the C. B. Martin debt, which is left open by request of parties for further enquiry, when this cause is recommitted to the circuit court of Greenbrier for further proceedings.

So far as we can ascertain from the record before us, the exceptions of the defendant, the executor of John Piercy, which were overruled by the circuit court in its decree of June 18, 1879, were properly overruled.

The court in its decree of June 18, 1879, properly sustained the first and second of the plaintiff's exceptions to the executorial account and the second of his exceptions to the legatees' account for the reasons and on the authorities set out in these exceptions. The court should also, for the rea-

sons we have stated have sustained the plaintiff's first exception to the executorial account and so far as it complained, that the legatees' account was not correct, it should have directed the legatee account to be opened at the close of the first year; but the mode of continuing the executorial accounts after that time, which was adopted by the commissioner, was not erroneous after the close of the second year, as it was not after that time stated upon the principles of an executorial account in effect.   The other exceptions of the plaintiff were by this decree of June 18, 1879, properly overruled on the principles we have stated and the facts proven in the case.

It remains now to enquire, what errors, if any, were committed by the circuit court in its final decree of November 12, 1879.   The court in this decree overruled all the exceptions, which had been filed to the commissioner's report dated October 24, 1879 ; and the first statement of said report was confirmed except as to the matter of the costs of this suit, which the court was of opinion should be paid out of the common fund.   The court did not err in this opinion.   The original suit, which was brought by the executor very shortly after he qualified as executor of John Piercy sr., had for one of its objects the settlement of his executorial accounts and the distribution of the estate under the order of the court; though this was not its main object.   The main object of this suit having become unnecessary to be determined by the court, it having been settled by the parties, the court heard this cause with the last cause.   If it had been convenient to the parties to settle the executorial accounts and make the distribution of the estate in this first suit only the court might have directed the costs to be paid out of the estate ; and it seems to me, as the settlement of the executorial accounts, which had been made in this first suit, were used as the basis of the settlement of these accounts in this last suit, the fact, that it was found to the convenience of parties to abandon the first suit and settle these executorial accounts in this cause, ought not to affect the fund, out of which the costs attending this settlement and suit should be paid, especially as both causes were heard together.   Had this first suit with this object not been instituted by the

executor, it would in this suit brought against him by the legatees of the estate have been proper to make him personally pay the costs. It is also proper that the costs incurred in this Court on this appeal should be paid out of the common fund, that is, by the testator *de bonis testatoris.* Regarding these two chancery suits as substantially the same, it was proper, that all the costs paid by the executor of John Piercy as well as his reasonable attorney fees should be paid out of the common fund, which, it is not disputed, must have been done in the first cause.

The only exceptions filed by the executor to this report dated October 24, 1879, were exceptions to his being charged with the judgment against Madison McClung and the debt on Hannah, Elizabeth and John Piercy; and they were but a repetition of exceptions, which had been filed to the former report of the commissioner, which by the decree of June 18, 1879, had been overruled properly by the court, the evidence in the cause showing, that these debts were properly charged to the executor. The plaintiffs renewed some of their exceptions to the first report, which had been already acted upon by the court; and the directions of the court in its decree of June 18, 1879, had been followed by the commissioner; and they filed numerous exceptions, which on examination will be found, except three of them, to be exceptions based on the commissioners having followed the directions of the court given in its decree of June 28, 1879. These directions we have fully considered. Most of them we have found were proper directions, though some of them were erroneous, and of course led to erroneous results in this report of October 24, 1879.

Three new exceptions only were filed by the plaintiff. One of these was "No. 10" which was, that Martha Masters was improperly charged with three beds valued at twenty-five dollars each. These beds the exception claims were her own; and she should not have been charged with them, and examination of the evidence shows, that this exception is not sustained by the proof; and it was properly overruled by the court. The exception "No. 11" is, that the interest on the pecuniary legacies is not calculated from the proper time. The report shows that the commissioner did not begin the charge of

interest on the legacies to the children for more than two years after the death of the testator. We have seen, that interest on their legacies should have been allowed from the death of the testator. This exception ought therefore to have been sustained instead of overruled by the court. The exception "No. 13" was to an alternate statement made by the commissioner at the instance of the executor. This alternate statement was not acted upon or considered by the court below and we need express no opinion in reference to it.

This decree of November 12, 1879, also proceeds as follows: "And it appearing from said report, that some of the legatees have been overpaid, and that the said executor of John Piercy sr., deceased, is entitled to recover against them respectively for the said excess, to-wit, Peter L. Anderson the sum of one thousand and sixty-two dollars and eighty-seven cents, Newton Hedrick and Cynthia, his wife, one hundred and ninety-two dollars and nine cents, Rachel Piercy five hundred and eighty-six dollars and ninety-nine cents, Rebecca Reed's heirs one thousand one hundred and sixty-nine dollars and sixty-two cents, all of which sums bear interest from the first day of December, 1879, until paid. But this court is not in a position to enforce said liability against the heirs of Rebecca Reed; it is therefore adjudged, ordered and decreed, that said George Piercy, executor of John Piercy, deceased, recover against said Peter L. Anderson, Rachel Piercy and Newton Hedrick and Cynthia his wife the sums respectively aforesaid with interest on the respective sums from the said 1st day of September, 1879, until paid."

As these payments were made by the executor to these legatees voluntarily, and the refunding of these sums were not necessary for the discharge of debts, on the principle, which we have laid down and the authority of *Davis et al.* v. *Newman,* 2 Rob. R. 664, it was error for the court to decree the repayment to the executor by the legatees of the sums, which they had received in excess of what was coming to them. We are therefore of opinion, that the decrees of June 18, 1879, and November 12, 1879, were both erroneous and must be reversed, and that the appellants must recover

of the appellee, George Piercy, executor of John Piercy, deceased, their costs expended in this Court to be paid out of the assets of his testator in his hands to be expended; and this cause is remanded to the circuit court of Greenbrier county to be further proceeded with according to the principles laid down in this opinion and further according to the principles governing courts of equity.   And the said circuit court is directed to recommit this cause to the commissioner of said court to settle the accounts heretofore directed to be settled in the decrees, which have been heretofore made in this case, with instructions to proceed and settle said accounts in accordance with the principles set out in this opinion, and further according to the principles governing courts of equity, and with special directions to take any other testimony, that may be offered on the question, whether the executor of John Piercy sr. should be charged with the C. B. Martin debt, and make his report to said circuit court.

JUDGES HAYMOND AND JOHNSON CONCURRED.

DECREES REVERSED.   CAUSE REMANDED.